## T. W. HARRISON v. J. R. MULVANE *et al.*

### No. 11,807. ( 63 Pac. 749.)

TRUSTS AND TRUSTEES — *Corporation Stock.* A person charged with the duty of selling corporation stock in order to raise a fund with which to pay encumbrances on the property of the corporation, who is himself the owner of one of the encumbrances junior in time to the others and acquired by him before he became obligated to sell the stock, is not a trustee as to the property of the corporation covered by the encumbrances, and forbidden to protect his own interests in it by buying the prior liens on it, merely because he was under obligation to sell the corporation stock to raise a fund to discharge the corporation indebtedness.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed February 9, 1901. *In banc.* Affirmed.

*T. W. Harrison* and *D. R. Hite,* for plaintiff in error.

*Holmes & Perry,* and *Overmyer & Mulvane,* for defendants in error.

The opinion of the court was delivered by

Doster, C. J. : This was an action in the nature of a creditor's bill, brought under section 481 of the civil code (Gen. Stat. 1897, ch. 95, § 501; Gen. Stat. 1899, § 4771), by the plaintiff in error, T. W. Harrison, as a judgment creditor of the Topeka Capital Company, against the defendants in error, J. R. Mulvane and others. The court below made a general finding on the evidence in favor of the defendants, and error has been prosecuted to this court. The question for consideration is, Did a trust exist on the facts disclosed on the trial in J. R. Mulvane in favor of the creditors of the Topeka Capital Company? As stated, the finding was general and in favor of the defendants ; hence we are bound to view the facts as claimed by them. If, therefore, there was evidence to support all of the material claims of the defendants, the judgment of this court must also be in their favor.

Summarized, the facts were that J. K. Hudson was indebted to one C. C. Baker in the sum of $15,000, secured by first mortgage on a newspaper property, and also indebted to the late Senator P. B. Plumb in the sum of $10,000, secured by a second mortgage, and to J. R. Mulvane in the sum of $5000, secured by a third mortgage on the same property. All this indebtedness was incurred prior to 1890. In that year the newspaper property was sold to the Topeka Capital Company, a corporation, in consideration of 500 shares of stock in the company issued to Hudson. Contemporaneously with this sale a written agreement was made between Hudson and the company by the terms of which 495 of the shares of stock were deposited with the Bank of Topeka in trust and as security for the payment of all indebtedness constituting

liens on the property, such stock to be sold by the trustee upon the written request of the board of directors of the Capital company for the purpose of raising funds with which to discharge the liens for indebtedness. The writing provided that the sale should be made by the president of the trustee bank, or, in case of his absence or inability to act, then by the vice-president. At this and all subsequent times hereafter mentioned J. R. Mulvane was the president of the Bank of Topeka.

Soon after the transaction last mentioned, Mulvane sold the debt and chattel mortgage owned by him to the Bank of Topeka, but bought it back in 1895. The amount paid for it was not shown. Its face value, including overdue interest, was $7500. The precise date of the repurchase was not shown. It would appear to have been as early as July, 1895, because in that month Mulvane made an affidavit of renewal of the mortgage as a subsisting lien owned by him. However, there is some uncertainty in his testimony as to whether the transaction did not occur at a later time. October 23, 1895, the board of directors of the Topeka Capital Company, in pursuance of the aforementioned agreement with J. K. Hudson, requested Mulvane, the president of the Bank of Topeka, to sell the stock held by the bank as trustee in order to raise a fund to discharge the indebtedness against the company's property, and, at the same time, they authorized the execution of a mortgage on the property to the Bank of Topeka to secure $3900 previously borrowed from it and an additional sum of $1100 for present purposes, making $5000 in all. This mortgage was executed, and constituted the fourth lien on the newspaper property. In pursuance of the request of the board of directors of the Capital company, Mul-

vane endeavored to sell the stock. It quite satisfactorily appeared from the evidence that he made a diligent effort to dispose of it, but was unable to find a purchaser. At or about the time of the direction of the company to Mulvane to sell the stock, the latter, being the owner of the third lien on the mortgaged property, bought the two prior liens. He bought the one owned by Baker for $15,000, paying the principal sum, without an accumulation of several thousand dollars of interest which then existed. He bought the one owned by the heirs of the Plumb estate for $8000, which was $2000 less than the principal sum, without counting a like accumulation of several thousand dollars of interest. His own lien at this time amounted to about $7500. He also bought the mortgage last mentioned, the one given by the Topeka Capital Company to the Bank of Topeka, for which he paid $5000. This made $35,500 of actual investment in the various securities mentioned.

In 1895, and prior to the matters heretofore stated, a suit in equity had been instituted in the United States circuit court for the district of Kansas by one J. E. Baker, to which all of the persons owning liens on the newspaper property were made parties defendant, and required to disclose their interest in said property. On August 5 of that year J. R. Mulvane filed a cross-bill in said suit, claiming a chattel-mortgage lien to secure the aforementioned indebtedness of about $7500 from the aforesaid J. K. Hudson. This would seem to be additional and confirmatory evidence of the claim made by him in this suit that the particular indebtedness mentioned was owned by him prior to the time of his purchase of the prior liens of C. C. Baker and the Plumb heirs. In the equity suit in the United States circuit court, a decree

was rendered in March, 1897, adjudging J. R. Mulvane to have liens on the property in his own original interest and as the successor by assignment of the indebtedness and liens of C. C. Baker, the Plumb heirs and the Bank of Topeka to the amount of $52,274, and also decreeing a sale of such property to satisfy the indebtedness. This sale was made and confirmed in April, 1897. The sale was made to one D. W. Mulvane, and, as reported by the master, was for the sum of $52,000. As a matter of fact, it was only for the sum of $38,500. As before stated, the actual investment of J. R. Mulvane in the mortgages covering the property at the time of and including his purchase of the prior liens of Baker and Plumb and the subsequent lien of the Bank of Topeka, and inclusive of his own lien, was $35,500. The Baker mortgage of $15,000 bore interest at eight per cent.; the Plumb mortgage of $10,000, purchased for $8000, bore interest at seven per cent.; the Mulvane mortgage of $5000 bore interest at twelve per cent., and the Bank of Topeka mortgage of $5000 bore interest at eight per cent. There had, therefore, fully $3000 of interest accumulated upon J. R. Mulvane's investment of $35,500 in October, 1895, when the most of it was made, at the date of the sale made by the master to D. W. Mulvane in April, 1897.

Upon the above state of facts, the plaintiff in error contends that J. R. Mulvane was a trustee for the Topeka Capital Company and its creditors, and is accountable to them for the difference between the amount actually invested by him in the various liens on the company's property and the amount reported by the master to have been realized at the foreclosure sale of such property. The reason for this claim is the familiar rule that a trustee is prohibited from pur-

chasing the property which is the subject of his trust, and which rule, at the election of the *cestui que trust*, avoids the sale or gives a right of action for resulting profits against the unfaithful trustee. It is said by the plaintiff in error that inasmuch as the Bank of Topeka was the trustee for the sale of the Topeka Capital Company's stock, and inasmuch as a corporation can act only by its officers, and inasmuch also as the president of the bank was specially designated in the trust agreement as the one to make the sale, Mulvane, as such president, was in reality the trustee. If this were a determining question in the case we might agree with the plaintiff in error, but the question does not involve the relation between the bank and its officers, nor the duties devolving upon them to discharge trusts resting upon the bank, but the question is, Did the trust assumed by the bank to sell the shares of stock to raise funds to pay the newspaper company's indebtedness preclude Mulvane, or even the bank as the trustee, from buying prior liens on the company's property to protect a subsequent lien held by him or it?

It must be observed that the trust was not in relation to the newspaper company's mortgaged property, but it was in relation to Hudson's shares of stock in the company, which had been pledged for the payment of the company's indebtedness. The trust was not in relation to the company's property, but it was in relation to Hudson's stock. It is true that the trust was to sell stock to pay indebtedness upon property, but that does not make the property or the indebtedness upon it the subject of the trust. The subject of the trust was not corporation property, but was shares of corporation stock. Had the trustee charged with the sale of the stock bought it for himself, the doctrine

invoked by the plaintiff in error might have application, but the trustee did not buy the stock, the subject of the trust. He only bought liens on the property to discharge which the proceeds of the sale of the stock were to have been applied if such sale could have been made. We do not believe that equity, rigid as it is in its scrutiny of the conduct of trustees, condemns such a transaction, in view of the fact that the trustee was himself the owner in good faith of a subsequent lien, to protect which it became advisable to make the purchase of prior liens. The Mulvane lien of $5000, the third in order of priority, antedated the making of the trust agreement. The debt, to secure which that lien was given, was contracted before Mulvane or the Bank of Topeka became a trustee, and it was in existence during all the time the trust agreement existed.

A question has been raised by the plaintiff in error as to whether that indebtedness was in reality owned by Mulvane or the bank of which he was president. It was contracted to Mulvane, but, as before stated, was afterward sold to the bank, and by the bank sold back to Mulvane, as he claimed. Now, for the purposes of the case, it is immaterial whether Mulvane or the bank owned it. One or the other of them did. If in reality the bank owned it, no right has been lost to the plaintiff in error through an assertion of ownership by Mulvane, its president. The ownership of the mortgage by the bank, with the consequent right to protect it by the purchase of outstanding liens, would have been as potent against the plaintiff in error as the same ownership with the same right in Mulvane. It might have been different if the Mulvane mortgage had been acquired by assignment from some source other than the Topeka Capital Company subsequently to the making of the trust agreement and with knowledge of

the existence of that agreement.  It might then have been claimed that the trustee was scheming to speculate in the trust property, assuming that such property was a newspaper property, and not shares of stock ; but the trustee, if he were to be called such, purchased no interest in the trust property, if it were to be called such, with a view to speculation in that property.  What the trustee, if he were such, bought was an outstanding prior lien on the trust property, if it were such, to protect the subsequent lien acquired by him before he became trustee and continuously held by him since that time.  This, we feel sure, he was lawfully authorized to do.

We might agree with the plaintiff in error that Mulvane, if a trustee as to the newspaper property or the liens upon it, was accountable for the difference made by him between his actual investment in the trust property and what he realized out of it at the master's sale.  It is this difference which the plaintiff in error asks.  He must, therefore, be held to have ratified Mulvane's acquisition of the legal title to the so-called trust property.  He does not ask that the transaction be set aside as void, but he permits it to stand, and asks that Mulvane be compelled to pay him such portion of the profits realized out of the transaction as will discharge his judgment.  If, therefore, Mulvane made no profits the plaintiff in error cannot lawfully have the relief asked.  As before shown, Mulvane made no profits except the contract rate of interest on his actual investment.  If we could concur with the view of the plaintiff in error as to Mulvane's liability, we could not hold him to the payment of a sum of money as profits on an unlawful transaction merely because the master reported a sale for a larger sum than was actually realized.  It would be only for ac-

tual profits that Mulvane could be held, if for any-thing. That, as before shown, was nothing but simple interest. The difference between his actual investment of $35,500, and $38,500, the sum actually realized by him at the sale, did nothing more than cover the interest which accrued between the two periods mentioned on the actual investment made. This, of course, is a form of profit, but it is not of that exaggerated amount or fraudulent character as to be taken seriously into account, even in a transaction which the law otherwise condemns.

Other claims of error have been made, but they are either subsidiary to the principal one above discussed, and therefore need not be mentioned, or they are not well taken. In the presentation of the case many authorities were cited on both sides, none of which, however, has a direct bearing on the precise question. All of them were simply declarative of abstract and fundamental rules, the soundness of which cannot be disputed. Their applicability to the case in hand is not, however, perceived. The controversy is a pecul-iar one. It relates to the right of a person charged with the duty of selling corporation stock in order to raise a fund to pay liens belonging to himself and others, to protect his own lien by buying those prior to it, when his own lien had been acquired prior to the time he took upon himself the obligation to sell the stock. Upon this precise question counsel have not furnished us with any direct authorities, and the multiplicity of our labors has prevented research for ourselves.

The judgment of the court below is affirmed.