[No. 4961.]

Bannerot v. McClure.

**1. Judgments—Setting Aside Default—Discretion of Court.**

A motion to vacate and set aside a default is addressed to the sound discretion of the court, and the order of the trial court will not be disturbed unless it clearly appears that there was an abuse of such discretion.—P. 479.

**2. Same.**

Where a default for failure to reply to new matter in an answer and cross-complaint was entered sixteen months after they were filed, and a motion and affidavit to set aside the default was filed eight months later, and failed to show that plaintiff, in permitting default, was excusable, overruling the motion was not abuse of discretion.—P. 479.

**3. Counter-claim—Matters which May Be Pleaded—Statutory Construction.**

Where the contract sued on constitutes the foundation upon which the plaintiff and defendant both rely for a recovery, the defendant may plead a modification of the contract as a basis for his counter-claim, under Mills' Ann. Code, § 57, subd. 1, providing that a counter-claim may be on a cause of action arising out of the transaction set forth in the complaint, or connected with the subject of the action—and this although the facts entering into plaintiff's case do not enter into defendant's, and vice versa, for from the nature of the subject this must always be so.—P. 481.

**4. Same.**

In the enactment of Mills' Ann. Code, § 57, the clear intention was to enable the court in one action to settle all matters in controversy relating to the contract or transaction which is the foundation of the suit. The word "transaction" is much more comprehensive than the word "contract"; and, therefore, any cause of action, whatever its nature, arising out of the cause of action alleged in the complaint, or connected therewith, in favor of the defendant and against the plaintiff, is a proper counter-claim.—P. 482.

**5. Same.**

Under Mills' Ann. Code, § 57, subd. 2, providing that, in an action on contract, any other cause of action arising also upon contract and existing at the commencement of the action may be set up in a counter-claim, such counter-claim must be limited to a claim affecting that of plaintiff in such manner as to diminish or defeat it or be antagonistic to it.—P. 483.

**6. Same.**

In an action to compel defendant to transfer his interest in certain mining claims to plaintiff under an alleged contract, defendant cannot set up in a counter-claim another independent contract in regard to entirely different claims, and ask that plaintiff be compelled to transfer them to him, since such relief is not proper under Mills' Ann. Code, § 57, subd. 2, providing that, in an action on contract, any other cause of action arising

also upon contract and existing at the time of the action, may be set up in a counter-claim.—P. 484.

*Error to the District Court of Teller County.*
*Hon. Louis W. Cunningham, Judge.*

Action by A. A. Bannerot against Aaron McClure. From a judgment for defendant on his cross-complaint, plaintiff brings error.

*Reversed and remanded.*

Mr. S. D. CRUMP and Mr. THOMAS C. BROWN, for plaintiff in error.

Mr. E. C. STIMSON, Mr. W. B. TEBBETTS, and Mr. H. M. MONROE, for defendant in error.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiff below—plaintiff in error here—by his complaint alleged, in substance, that in January, 1900, he employed the defendant as his general agent in the Cripple Creek mining district to look after, represent, and protect his mining interests in said district, and to search for and locate in plaintiff's name the unappropriated public mineral lands in Teller county, for which services plaintiff agreed to pay and did pay defendant three dollars per day during the term of employment, which continued from January, 1900, to July 1, 1901; that by the terms of such employment the plaintiff was entitled to defendant's entire time and services and to all mining claims which defendant might locate; that, during the period of such employment, defendant discovered and located fourteen mining claims, which for convenience we shall designate the "Carls N." group; that the locations were perfected, location certificates made and filed under defendant's directions; that five of the mining claims included in the

above group were located by defendant in the joint names of plaintiff and himself, and the remainder of the claims were located by the defendant in the joint names of himself and one C. M. Adams; that by mesne conveyances plaintiff has acquired the interest of said Adams therein and is the owner thereof; that in placing his name on the location notices and certificates of location, and thereby attempting to acquire an interest in the claims, defendant acted in violation of the terms of his employment and in fraud of plaintiff's rights; that, upon discovering that defendant claimed an interest in the locations, plaintiff demanded a conveyance from the defendant, which defendant refused to make.

Judgment was demanded that defendant be compelled to convey to plaintiff all his right, title and interest in said mining claims.

By his answer, defendant admitted that he was in the employ of plaintiff from September, 1899, to July 20, 1901, but denies that he was in such employment by virtue of the agreement set out in the complaint; admits that all mining claims mentioned in the complaint were located during the years 1900 and 1901, but alleges that he located them under the agreement hereinafter set out; denies all other allegations of the complaint not admitted. As to two of the claims mentioned in the complaint, the answer alleges that they were located for the purpose of turning the same over to a corporation; and as to one of the claims, the answer alleges that the same was located on his own account and at his own expense, and that he afterward gave plaintiff a one-half interest therein, and that he has long since disposed of his interest in said claim.

By way of second answer and cross-complaint, the defendant alleged that prior to January 1, 1900, he was in the employ of plaintiff as a miner; that

during the month of January, 1900, at the request
of plaintiff, he took charge of plaintiff's business in
Teller county, and continued to look after his in-
terests there until the early part of June, 1900; that
for such service he was paid the sum of three dollars
per day; that at the above date he refused to further
continue to work for plaintiff unless he was paid
four dollars per day; that the plaintiff, being de-
sirous of acquiring interests in mining claims in a
certain locality in Teller county, and of securing
defendant's services as a prospector and miner in
the location of mining claims, in the early part of
June, 1900, entered into an agreement with defend-
ant, to the effect, that defendant should act as plain-
tiff's agent and representative in Teller county in
the location and patenting of mining claims, the
plaintiff to own three-fourths and the defendant one-
fourth of all claims located; the plaintiff to pay all
expenses of assessment work and procuring patents,
and to pay defendant three dollars per day; that
pursuant to such agreement defendant located a
group of claims consisting of six, which for con-
venience we shall designate the "Black Hawk"
group; that he was instructed by plaintiff not to
inform any one that plaintiff was interested in such
claims and to locate plaintiff's interest in said claims
in the name of C. M. Adams, plaintiff's brother-in-
law; that in obedience to such instructions, said
claims were located in the names of defendant and
C. M. Adams; that afterwards, in order to facilitate
procuring a patent for such group of claims, and by
consent, defendant's name was omitted from the
certificates, and the same were recorded in the name
of C. M. Adams alone; that in further pursuance of
such agreement, during the month of July, 1900,
defendant located three of the claims mentioned in
plaintiff's complaint, and acting under instructions

from plaintiff, the same were located in the name of plaintiff and defendant, the location certificates expressing the interest owned by each, to wit, three-fourths to plaintiff and one-fourth to defendant, and the certificates were so recorded; that in further pursuance of such agreement, on January 1, 1901, nine of the claims mentioned in plaintiff's complaint were located, and at the request of plaintiff the locations were made in the name of C. M. Adams & Co., and when the certificates were made out the words "& Co." were dropped, and defendant's name and interest placed on and in each location certificate without objection on the part of plaintiff until the commencement of this action; that, by virtue of the agreement and the work of defendant in pursuance thereof, defendant is the owner of an undivided one-fourth interest in and to all of the aforesaid mining claims; that a United States patent, in the name of C. M. Adams, has been issued and obtained by plaintiff for the group of claims designated as the "Black Hawk" group; that Adams has conveyed the last named group of claims to plaintiff; that defendant owns an undivided one-fourth interest in each of said claims, and that plaintiff has wrongfully and in violation of his agreement caused said claims to be conveyed to him, when he was only entitled to an undivided three-fourths thereof.

By way of third defense and cross-complaint, defendant alleged that on June 28, 1900, he and plaintiff entered into an agreement, which seems to have been in writing, pursuant to which defendant conveyed to plaintiff an undivided three-fourths interest in three mining claims, which for convenience we shall designate the "Henry M. Teller" group; in consideration of the conveyance by defendant to plaintiff of such interest in said mining claims, plaintiff agreed to patent the same and to organize a cor-

poration, to which the mining claims designated, with other mining claims owned by plaintiff, were to be conveyed by plaintiff and defendant, the capital stock of such corporation to be divided between plaintiff and defendant according to their respective interests in said mining claims at the time of the transfer; that defendant has performed all the terms of the agreement to be by him performed, but that plaintiff has failed and refused to perform his part of such agreement, except that during the month of June, 1901, a United States receiver's receipt was issued and obtained by plaintiff for said mining claims.

Defendant prayed that plaintiff's complaint be dismissed; that plaintiff be compelled to convey to him an undivided one-fourth interest in the "Black Hawk" group and an undivided three-fourths interest in the "Henry M. Teller" group.

The complaint was filed April 18, 1902. The answer and cross-complaint was filed June 7, 1902, and served upon plaintiff or his counsel.

October 13, 1903, default for failure to reply to the new matter set up in the answer and cross-complaint was entered.

June 1, 1904, a motion to set aside the default was filed supported by the affidavit of one of plaintiff's counsel. On the same day the court overruled the motion to set aside the default and by consent of both parties, a jury being waived, the issues presented by the complaint and answer were tried to the court, resulting in a judgment of dismissal of plaintiff's complaint and judgment for defendant for costs, June 17, 1904.

June 23, 1904, the case was heard on defendant's cross-complaints, and upon the evidence adduced the court found that defendant was the owner of, and entitled to, an undivided one-fourth interest in the

"Black Hawk" group of claims, record title of which stood in the name of plaintiff, and that defendant was the owner of, and entitled to, an undivided three-fourths interest in the "Henry M. Teller" group, the record title of which stood in the name of plaintiff, and decreed that plaintiff, within thirty days of the date of the decree, convey to defendant said interests, and, upon his failure so to do, the clerk of the court was appointed a special commissioner to make such conveyance.

Error is assigned upon the action of the court in overruling plaintiff's motion to set aside the default.

A motion to vacate and set aside a default is addressed to the sound discretion of the court, and the order of the trial court will not be disturbed unless it clearly appears that there was an abuse of such discretion.

The motion and the affidavit filed in support thereof, utterly failed to show that plaintiff's neglect in permitting the default to be taken was in anywise excusable, and there was no attempt made therein to set forth a meritorious defense to the cause of action averred in defendant's cross-complaints.— *Barra v. People*, 18 Colo. App. 16.

In view of the fact that the default was not entered until more than sixteen months after the service and filing of the answer and cross-complaint, and that the motion to set aside the default was not made until nearly eight months after the entry of the default, upon the facts stated in the motion and affidavit filed in support thereof, there was no error in overruling the motion.

The judgment of June 17, 1904, dismissing the complaint is unassailed.

It is contended that the judgment in favor of defendant upon his cross-complaint, rendered June

23, 1904, is erroneous for the reason that the matters set up by way of cross-complaint are not germane to the issues presented by the complaint.

Section 56, Mills' Ann. Code, provides: "The answer of the defendant shall contain: *  *  * second, a statement of any new matter constituting a defense, or counter-claim, in ordinary and concise language, without unnecessary repetition."

Section 57 provides: "The counter-claim mentioned in the last section shall be one existing in favor of the defendant or plaintiff, and against a plaintiff or defendant between whom a several judgment might be had in the action, and arising out of one of the following causes of action: First, a cause of action arising out of the transaction set forth in the complaint or answer, as the foundation of the plaintiff's claim or defendant's defense, or connected with the subject of the action. Second, in an action arising upon contract, any other cause of action arising also upon contract, and existing at the commencement of the action."

The counter-claim mentioned in the above section of the Code is the cross-bill in equity practice.— *Allen v. Tritch*, 5 Colo. 223, 225; *Travelers' Ins. Co. v. Redfield*, 6 Colo. App. 190, 196.

In the latter case, in speaking of a counter-claim, the court said:

"It is an independent proceeding by the defendant against the plaintiff for affirmative relief upon the trust deed, and in which the defendant is the real plaintiff, and the plaintiff the real defendant. In equity practice a defendant could obtain relief of that kind only by filing a cross-bill; and while, under our Code, such a bill passes under the general name of counter-claim, its characteristics and purposes are the same as under the practice in equity."

An analysis of the defendant's first cross-com-

plaint or counter-claim, so far as the same relates to the "Black Hawk" group, will, we think, bring it within the first subdivision of § 57, *supra,* as being a cause of action arising out of the transaction set forth in the complaint and connected with the subject-matter of the action.

Plaintiff sued to enforce a conveyance of an interest in certain mining claims—the "Carls N." group—under a contract of employment of defendant, alleged to have been made January, 1900, upon specified terms; which contract, it is alleged, was in force from January 1900, to July, 1901.

Defendant answered, admitting that he was in the employ of plaintiff during a portion of the time alleged, upon terms substantially as alleged, but averred that in June, 1900, the terms and conditions of his employment were, by agreement between the parties, changed as hereinbefore set forth, and that thereafter he located the "Carls N." group and the "Black Hawk" group; that pursuant to the instructions of plaintiff, patent title to the "Black Hawk" group became vested in Adams, who conveyed to plaintiff the entire title to such group contrary to the terms of the contract then existing between plaintiff and defendant; and prayed a conveyance from the plaintiff for an undivided one-fourth interest in said "Black Hawk" group.

Thus it is clear that the basis of defendant's first cross-complaint or counter-claim is the transaction which resulted in the contract set forth in plaintiff's complaint, and is unquestionably directly and immediately connected with the subject of the action alleged in the complaint. Otherwise stated, the contract pleaded by plaintiff constitutes the foundation upon which the plaintiff and defendant both rely for a recovery. It is the link which forms a direct connection between the two diverse causes of action.

It is true that some facts entered into plaintiff's case which do not enter into defendant's case, and *vice versa;* but from the nature of the subject this must always be so.

In the enactment of the Code provisions it was not intended to limit the defendant in his right to file a counter-claim, to an action where the facts relied upon and alleged by him were identical with the facts relied upon and alleged by the plaintiff.

The clear intention of the framers of the Code was, that the court in one action should settle all matters in controversy relating to the contract or transaction which is the foundation of the suit.   The word "transaction" is much more comprehensive than the word "contract."   Any cause of action therefore, whatever its nature, arising out of the cause of action alleged in the complaint, or connected therewith, in favor of the defendant and against the plaintiff is a proper counter-claim.   Any other construction would frequently defeat the ends of justice by preventing a full examination of the matter in controversy where the rights of the parties were so dependent upon each other that they must necessarily be considered together to render a correct judgment.

The decree of June 23, 1904, in favor of the defendant as to the "Black Hawk" group, was not erroneous and will be affirmed.

It is conceded by appellee that the contract concerning the "Henry M. Teller" group of claims, which is the basis of the second cross-complaint, is quite foreign to the subject-matter of the complaint. Appellee maintains, however, that the cause of action alleged in the complaint, being upon contract, the language of § 57, "any other cause of action arising also upon contract," permits the defendant to set up by way of cross-complaint any cause of action whatever, arising upon contract, no matter how foreign it

may be to the cause of action alleged in the complaint.

With this contention we do not agree.

In discussing counter-claims embraced within the second subdivision of § 57, Mills' Ann. Code, *supra*, Pomeroy says:

"If the plaintiff's cause of action arises on contract, any counter-claim, legal or equitable, or set-off also arising on counter-claim, is admissible; provided the general rule heretofore stated is complied with, that the relief granted to the defendant shall in some manner interfere with, lessen or modify, if not destroy, that otherwise obtainable by the plaintiff."—1 Pomeroy's Code Remedies, § 796.

In *Waddell v. Darling*, 51 N. Y. 327, 330, it is said:

" 'Counter-claim' was a new term introduced into the Code, which is limited and defined therein. When the action is upon contract, unless the counter-claim arises out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or be connected with the subject of the action, it must be a legal or equitable cause of action against the plaintiff arising upon contract and existing at the commencement of the action. It is manifest, however, that every cause of action existing in favor of the defendant against the plaintiff, arising upon contract, cannot be the subject of a counter-claim. It must be a cause of action, upon which something is due the defendant, which can be applied in diminution of plaintiff's claim. For instance, a cause of action for the specific performance of a contract in reference to real estate arises upon contract, and yet cannot be set up as a counter-claim unless it grew out of, or be connected with, the cause of action alleged in the complaint."

The counter-claim under discussion, in all the

authorities, seems to be limited to a claim affecting that of plaintiff in such manner as to diminish or defeat it, or to be antagonistic to it.

In *Dietrich v. Koch,* 35 Wis. 618, 626, it was said:

"The term 'counter-claim,' of itself, imports a claim opposed to, or which qualifies, or at least in some degree affects, the plaintiff's cause of action. It has been held in New York that a counter-claim, to be valid, must to some extent impair, affect or qualify the plaintiff's right to the relief to which he would otherwise be entitled by his action. In *Matoon v. Baker,* 24 How Pr. R. 329, the court says: 'A counter-claim, to be available to a party, must afford to him protection in some way against the plaintiff's demand for judgment, either in whole or in part. It must, therefore, consist in a set-off or claim by way of recoupment, or be in some way connected with the subject of the action stated in the complaint. It must present an *answer* to the plaintiff's demand for relief, must show that he is not entitled, according to law, or under the application of just principles of equity, to judgment in his favor, or as to the extent claimed in the complaint.' See, also, *Pattison v. Richards,* 22 Barb. 143; and *National Fire Ins. Co. v. McKay,* 21 N. Y. 191. In the latter case, Judge Comstock uses the following language: 'I apprehend that a counter-claim, when established, must in some way qualify or must defeat the judgment to which a plaintiff is otherwise entitled.' That the New York courts have held correctly on this subject, we entertain no doubt whatever."

The above cases were under Code provisions substantially the same as ours.

We are of the opinion that the matters alleged in defendant's third answer and cross-complaint are not the proper subject of a counter-claim under the

second subdivision of § 57, *supra,* and that that portion of the decree of June 23, 1904, in reference to the "Henry M. Teller" group of claims, is erroneous and must be reversed. .

The judgment and decree of June 23, 1904, will be reversed and the cause remanded to the court below with instructions to enter a judgment and decree as herein indicated, each party to pay his own costs incurred in this court.          *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE CASWELL concurring.