[No. 6270]

SYKES v. KRUSE ET AL.

1. **Promissory Note—Endorsee—Right of Action** — The endorsee of a promissory note is entitled to an action thereon against the maker, though he paid nothing for it, and against a prior endorser.—(563)

2. **Endorser — Liability** — To charge the endorser, presentment for payment, and notice to him of the dishonor, must be alleged and shown.—(564)

Our statute (Laws 1897, c. 64) is substantially a codification of the law merchant.—(564)

3. **Pleading—Complaint—Substantial Defects,** may be urged on appeal, though not presented in the court below, e. g.; failure, as against the endorser of negotiable paper, to allege presentment for payment and notice of dishonor.—(565)

The judgment in Edward Malley Co. v. Londoner, 41 Colo. 436, was not intended to abrogate the provisions of section 55 of the code.—(565, 566)

General demurrer to the whole complaint does not waive substantial defects in particular counts.—(565)

4. ——— Demurrer — One Good Count — Where one count of several is sufficient, a demurrer to the whole complaint must be overruled.—(565)

5. · ——— Counter-claim — New Parties — Kruse brought an action as endorsee of promissory notes, payable to a bank of which he was a director, against an endorser. The defendant pleaded that the endorsement was made after maturity, and without consideration; that the bank was the real party in interest, and was controlling the action; that the notes were given for money loaned to the Kansas-Burroughs Mining Company, to enable it to purchase certain mines; that defendant was the president of that company, and a judgment creditor thereof for a large amount; that certain mines belonging to the La Crosse company were of great value to the Kansas-Burroughs company, and, in order to obtain control thereof, the latter company purchased the whole stock of the former; that the Kansas-Burroughs company, being insolvent, the creditors thereof, in October, 1904, assigned all its capital stock to certain trustees for the benefit of its creditors, with power to operate the mines and dispose of the property for the payment of its debts; that Potter, the president of the bank, was one of these trustees, and the managing trustee; that all the creditors of the Kansas-Burroughs company also assigned their claims to the same trustee, and that the trustees accepted the trust; that it was agreed between defendant and Potter that the properties of the La Crosse company should be purchased on execution sale, in the interest of the Kansas-Burroughs company; that accordingly it was purchased by Potter, as trustee, but that, in violation of his trust, he took the title in the name of the bank, with intent to defraud defendant, and the other beneficiaries in the trust; that the property so acquired was more than sufficient in value to satisfy the promissory notes set up in the complaint. Held, a proper counter-claim, entitling the defendant to affirmative relief; that Potter and the bank were necessary parties defendant to a complete determination of the action.—(567-573)

6. ———Motion to Strike—In determining a motion to strike out a pleading, all matters well pleaded are to be taken as true. —(570)

7. Trustees — Duties and Disabilities — The president of a bank who has accepted the position of trustee for the creditors of a mining company, among whom is the bank, is under duty to protect all alike. He is not at liberty, in administering the

(36)

trust, to acquire title for the bank exclusively, to a property which is of great value to the mining company. The circumstance that the property so acquired was not expressly included in the trust is not important, where the stock of the corporation to which the property belonged was so included.—(570-572)

*Error to Gilpin District Court*—Hon. FLOR ASHBAUGH, Judge.

Messrs. MACBETH & MAY and Mr. JOHN F. TRUESDELL for plaintiff in error.

Mr. H. A. HICKS and Mr. L. J. WILLIAMS for defendants in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court:

This action was brought by H. Jacob Kruse, as endorsee of The Rocky Mountain National Bank, against The Kansas-Burroughs Consolidated Mining Company, the plaintiff in error Sykes, and one Hoffman, upon six promissory notes. The complaint contained six separately stated causes of action upon these several notes. Of five of them the mining company and plaintiff in error Sykes were endorsers merely; of one he was the maker. Sykes · filed a separate demurrer to the complaint in its entirety, on the ground that it did not set forth facts sufficient to constitute a cause of action against him, which was overruled. He then filed a separate answer and counter-claim and asked for, and obtained, an order making The Rocky Mountain National Bank and Thomas H. Potter its president, parties, and they were brought into court. The plaintiff below moved to strike certain parts of Sykes' answer and counter-claim and to vacate the order making Potter and the bank parties. Potter and the bank filed separate motions to quash the summons and return of the sheriff thereon as against them. All of these motions

were granted. Whereupon Sykes filed an amended
separate answer and counter-claim, setting forth sub-
stantially, but with some amendments, the same mat-
ters contained in the first answer. Plaintiff then
filed a motion to strike the material parts of the
counter-claim, which was granted. Substantially all
that was then left of Sykes' amended answer was the
admission of the making of the one note and the en-
dorsement of the other five and their delivery to The
Rocky Mountain National Bank, with a want of
knowledge on his part as to whether the notes were
owned by plaintiff, coupled with an allegation that
if they were endorsed or delivered to plaintiff by the
bank it was without consideration, and after their
maturity. The new matter of the answer not stricken
was denied by the plaintiff in a replication. Upon
the trial plaintiff, having the notes in his possession,
produced them, and testified that he was the owner
and holder of them, and rested. The defendant
Sykes, on cross-examination was not permitted by
the court to ask plaintiff what he paid for the notes.
He then moved for a nonsuit on the ground that
neither the proof nor the pleadings entitled plaintiff
to a judgment on the causes of action set forth in the
complaint, which was denied. The court rendered
judgment for plaintiff against defendant Sykes in
the aggregate sum of about $40,000, being the full
amount of the principal of the notes and the interest.
This judgment was excepted to by Sykes and he is
here with his writ of error.

Plaintiff being the holder of the notes and having
produced them at the trial, even though he paid noth-
ing for the assignment, was entitled to recover
against defendant Sykes, the maker of one and en-
dorser of the others, unless for some reason other
than the alleged lack of consideration for the assign-
ment defendant could not be held.—*Walsh v. Allen,*

6 Col. App. 303. It might be, were it not for the matters alleged in the answer by way of counter-claim, that the judgment would be permitted to stand as to one of the causes of action set up in the complaint, namely, the one on the promissory note of which defendant was the maker; but, as we shall hereafter see that the judgment was for a greater sum than plaintiff was entitled to, and that the counter-claim, which we think good, if proved, might have more than offset the amount thereof, it must be reversed in its entirety.—*Denver & Rio Grande Ry. Co. v. Neis,* 10 Colo. 56; *Buenz v. Cook,* 15 Colo. 38; *Welch v. Jepson,* 13 Col. App. 520.

The complaint does not allege, nor does the proof show, that there was any presentment of these notes endorsed by defendant for payment, or notice of dishonor given, nor were any facts that would excuse presentment, demand, or notice pleaded or proved. That there must be presentment for payment and the giving of notice of dishonor, under our statute, in order to fix an endorser's liability, is conceded. This is the general rule, and this case, as pleaded, does not come within any exception.—Session Laws '97, pp. 225, 228, secs. 70, 89. It was the rule of the law merchant; our negotiable instrument act being substantially a codification thereof.—14 Enc. P. & P. 534, *et seq.; Commercial National Bank v. Zimmerman,* 185 N. Y. 210; *Ford v. Booker,* 53 Ind. 395; *Bosch v. Kassing,* 64 Iowa 312; *Knott v. Hicks,* 21 Tenn. 161; *Baxter v. Erwin,* 1 Shannon (Tenn.) 113; *Slacum v. Pomery,* 6 Cranch (U. S.) 377; *Rushton v. Aspinall,* 2 Douglas, Court of King's Bench, 679; *Harlan v. Dew,* 3 Head's Rep. (40 Tenn.) 505. Indeed plaintiff does not question this rule of law, but seeks to escape its application upon the ground that defendant did not specifically call the attention of the trial court to the absence from the

complaint of an allegation concerning presentment and notice of dishonor. The authorities already cited hold that in a case of this kind a complaint must contain these allegations, otherwise it is fatally defective, and some of the cases say that a judgment by default is not supported by such a complaint, and the defect is not cured by verdict. The complaint being thus fatally defective and not stating a cause of action upon the five causes of action which were based upon the notes of which the defendant Sykes was merely an endorser, the objection under the express provision of sec. 55 of our code may be raised at any time, even for the first time upon the review, though a general demurrer was not filed in the trial court. Plaintiff, however, says, since the general demurrer went to the whole complaint, there being one good cause of action stated, the one based on the note of which defendant Sykes was maker, it was properly overruled. Unquestionably this is true, since there was one good cause of action.—*Downing v. Haas*, 33 Colo. 344. This fact, however, does not preclude defendant from raising, at any time, the objection that the complaint does not state a good cause of action as against him upon the other five causes of action. Plaintiff cites the case of *The Edward Malley Co. v. Londoner*, 41 Colo. 436, to the proposition that though a failure of the complaint to state a cause of action may be raised for the first time on review, it will not be entertained by the reviewing court if the attention of the trial court was not specifically called to such defects therein as might have been obviated by a slight amendment upon the trial. The decision in that case must be taken in connection with its own facts. It is apparent that this court did not intend to abrogate the express provision of sec. 55 of the code, or overturn many of its own previous decisions, that the objection that the complaint does

not state a cause of action may be taken for the first time on review, even though not interposed below. The *Malley case* was a suit against a father for necessaries furnished to his minor son, and defendant questioned the sufficiency of the complaint, because there was no allegation therein that the father had refused to supply the necessaries, and also on the ground that it was not alleged that the son was at the time a minor. The court expressed no opinion as to whether it was necessary for the complaint to contain the first allegation, but in answer to the contention, made for the first time on appeal, that the complaint was silent as to the status of the son, said that the defect, if any, could have been cured by a slight amendment at the trial, and was not a matter for reversal. The complaint in that case did contain an averment that "defendant was a minor, and supported by and at the expense of the defendant herein." This was unquestionably a slip of the pleader, who intended to say that the son, not the defendant (the father), was a minor. The context clearly shows it, and the court might well say that the mistake, after verdict, was cured. It was not an instance where the complaint lacked an essential allegation, but where the allegation was defectively or ambiguously stated, when the thought of the pleader was clear, and the mistake could have been corrected by the change of a single word, by writing "son" instead of "defendant." Such is not this case. The defect in the complaint here, which is entirely silent with respect thereto, would require a distinct paragraph in each cause of action, expressly alleging presentment and notice of dishonor, or giving some excuse for their omission.

Besides, the defendant, at the close of the evidence, interposed a motion for nonsuit and called the court's attention, not only to the lack of proof of

these essential requirements in a suit by an endorsee against an endorser of a note, but also to the absence of the necessary allegations thereof in the complaint. Then, too, defendant's counsel state in their brief that when the attention of plaintiff's counsel was thus called to the necessity of allegation and proof of these essential elements, they concluded they were matters of defense to be set up in the answer and established by defendant. So that, for all the fore-going reasons, it appears that defendant is in a position to question here the sufficiency of the complaint and lack of proof as to such essential matters.

We now consider the order striking the new matter of the answer which is pleaded as a defense and a counter-claim. It is lengthy, but may be thus summarized: The action, while nominally in the name of Kruse, who is a director of The Rocky Mountain National Bank, is really in its interest, prosecuted in its behalf, wholly under its control, and it is the real party in interest, and the owner of the notes. The money for which these notes were given was borrowed of The Rocky Mountain National Bank for, and used by, The Kansas-Burroughs Consolidated Mining Company, of which defendant Sykes was president, to buy certain mining property acquired by it; that Sykes, from time to time, advanced large sums of money to keep it on its feet and to pay these notes and other claims, and that he is a judgment creditor of his company in a large sum of money; that certain mining property, owned by the La Crosse company, adjoins the property of the Kansas-Burroughs company; which, because of its situation, is of great value and advantage to the later company in developing its mines, and in order to obtain control thereof, the Kansas-Burroughs company bought and owns 93,000 shares, all that is known to exist, of the La Crosse company's stock; that in October, 1904, the creditors

of the Kansas-Burroughs company, which was then
insolvent, entered into a trust agreement with it
whereby all of its capital stock and its holdings of the
La Crosse company stock, and all of its other prop-
erty, were assigned to certain named trustees of
whom Thomas H. Potter, the president of The Rocky
Mountain National Bank, was and is the managing
trustee, for the benefit of the creditors of the mining
company, including the bank and Sykes, with power
to the trustees to work the mines and conduct its busi-
ness, sell and dispose of its property with a view to
pay all its debts, and the creditors also assigned to
the trustees their claims.    The trustees, with Potter,
then president of the bank, as managing trustee,
accepted the trust, and thereafter conferred with
Sykes about acquiring direct title to the mining
property of the La Crosse company in the name of
the Kansas-Burroughs company, which would be to
the interest of all creditors; and, suit having been
brought against the La Crosse company by one Was-
tell on a just claim, Sykes being also president of
that company, it was agreed between Potter and
Sykes, the latter acting for himself and the mining
company, the former for all the trustees, that if judg-
ment was obtained and sale had thereunder, the
property in question should be bought and title
vested in, or held in the interest of, the Kansas-
Burroughs company; that thereafter at such sale the
property was bid in by Potter as trustee, he then
being managing trustee, as already stated, and he
afterwards took the sheriff's deed in the name of the
bank, in violation of his trust and to defraud the
other creditors and beneficiaries under the trust
agreement, including defendant Sykes.    That Sykes
supposed that Potter was carrying out their agree-
ment and buying in the interest of the Kansas-Bur-
roughs company's creditors, otherwise he would not

have allowed the property to be bid in by Potter for a small sum of money, or the title thereto vested in the bank. Sykes offers to repay Potter, or the bank, if it advanced the purchase price, all the costs and expenses of the purchase. That the bank has received by Potter's action property of great value and sufficient to more than satisfy the claims under these notes against plaintiff in error. He asks to have Potter and the bank made parties, for an accounting by them, that they cause the property thus acquired to be turned over to the creditors and beneficiaries, and for general relief.

It is the contention of defendant, and seems to be conceded, that as the notes were assigned by the bank through its president Potter after maturity, the same defense against plaintiff Kruse, the assignee, and a bank director, could be made as if the suit were by the bank itself in its own name.

By sec. 57 of our code a counter-claim is one existing in favor of a defendant against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action: First, a cause of action arising out of the transaction set forth in the complaint as the foundation of plaintiff's claim or connected with the subject of the action; second, in an action arising upon contract, any other cause of action arising also upon contract and existing at the commencement of the action. The argument advanced by defendant is that since Potter, the president of the bank, which is the real owner of the notes, became the managing trustee for the benefit of the creditors of the Kansas-Burroughs company, he could not, especially in view of his agreement with Sykes, without violating his duty as trustee, purchase at the execution sale the property of the La Crosse company and hold it for his own private interest or assert title in himself as

an individual, or for his bank. The plaintiff says that these new matters in the answer do not in any sense constitute a counter-claim in this action against the plaintiff, and, if they are true, the defendant might obtain relief in a separate and appropriate action against Potter and the bank; that the subject of this action is the promissory notes sued upon, and the subject of the counter-claim is entirely separate and distinct and consists in the violation of certain duties by a trustee wholly unconnected with the subject-matter of the main action.

If the new matter in the answer is not a counter-claim under the first, it is so under the second, clause of sec. 57. It is also a good defense, in whole or in part. But it is more than a defense. It entitles defendant to affirmative relief, and for that reason Potter and the bank were properly made parties to the action; so that, whatever relief defendant is entitled to thereunder in addition to an offset against the notes, if any, might be awarded against them, whereas, as against plaintiff, relief would be restricted to the amount of the notes. To a complete determination of the controversy, Potter and the bank should be retained as parties.

The matters set up in the counter-claim of the answer are of such a character that they would either destroy altogether plaintiff's cause of action, or to some extent tend to decrease or diminish the amount of his recovery. They are therefore properly matters which may be included in a defense or a counter-claim. It must be borne in mind that, in passing on the motion to strike, we are required to assume the truth of the matters well pleaded in the answer. What the facts are is for determination on a trial. If it be true, and such is the charge, that Potter, for the benefit of the beneficiaries, undertook to operate the mining property and conduct the business of the

mining company, the primary debtor upon these notes, and fraudulently, and in violation of his trust, and contrary to his express agreement with defendant, which was made for the benefit of all creditors, procured title to property belonging nominally to the La Crosse company, but which in reality, through its ownership of its capital stock, belonged to the Kansas-Burroughs company, it would seem to be a violation of the duties to the Kansas-Burroughs company and its creditors, which he owed as a trustee under the trust arrangement. This was evidently entered into for the benefit of all, not one, of the creditors. Plaintiff is mistaken in saying the mining company was not a party to the trust agreement. Indeed it created the trust and assigned to the trustees the property which is its subject-matter. It is true, as the plaintiff says, that a trustee may, notwithstanding the trust relation, acquire title at a judicial sale, not brought about by himself, of the trust property; yet we do not think that principle is applicable to this case. The claim in Potter's behalf is that he was justified in buying at an execution sale and obtaining deed, because, before he became a trustee, his bank had a claim against the Kansas-Burroughs company which he had the right to, and did, protect by buying the trust property, notwithstanding his position as trustee. That might be true were it not that the claim which he and his bank hold against the Kansas-Burroughs company, which is represented by the notes in suit, had been assigned to himself and the other trustees along with the assignment of the claims of this defendant and other creditors against the same debtor. It was as much his duty to protect the rights of the other creditors as the rights of his bank, and when, at the execution sale, he purchased what was really the property of the Kansas-Burroughs company, or, if not legally its property, still the property

which in equity belonged to it and which he agreed to acquire, and whose possession was so valuable and important to all creditors, and subsequently had the deed to the property taken in the name of his bank, the transaction could be avoided at the election of the beneficiaries. It is still impressed with the trust relation and must be devoted and applied to the use of all the beneficiaries under the trust arrangement in proportion to their respective claims. Their rights are not dependent on proof of Potter's active fraud. It is not charged that he was guilty of any, in fact, but, as matter of law, he violated his trust when he acquired this property for his bank alone and not for all his beneficiaries.

It is argued, however, by plaintiff that the rule invoked by defendant is not applicable for the further reason that the property which Potter bid in at the execution sale was not covered by the declaration of trust; that the trust agreement did not include the mining property itself owned by, but merely all the known existing stock of, the La Crosse Mining Company, and only the mining claims themselves were bought. We do not think the distinction makes any difference in the principle of law applicable. Defendant cites the case of *Harrison v. Mulvane*, .62 Kans. 454, in favor of this contention. We do not so interpret that decision. In that case the trustee was charged under the trust with the duty of selling certain corporation stock—which belonged to an individual stockholder—to raise a fund to pay encumbrances on the property of the corporation, including an encumbrance belonging to the trustee junior in time to the others and acquired by him before he became a trustee, and it was held that the trustee was not thereby a trustee of the encumbered property of the corporation and forbidden to protect his own lien by buying the prior liens. That, however,

is not this case. Here it was the trustee's duty, under the trust agreement, to protect the interests of all the creditors of the Kansas-Burroughs mining company, including that of his bank and defendant Sykes, which had been transferred to him, and he could not show any preference as between them. He could not operate the property of the Kansas-Burroughs company, or conduct its business, to the best advantage of the creditors, by buying for himself as an individual, or for his bank, other property that was so essential to the profitable working of the trust property, and which he agreed to buy, and which it was his duty to buy, if he could, for the benefit and protection of the creditors. We think this case is governed by the general rule applicable to trustees with reference to their acquisition of trust property.

We are of opinion that if the equitable matters set up in the answer are not connected with the subject of the action or do not arise out of the transaction set forth in the complaint, they do arise out of the contract by which the trust relation was created, existed at the commencement of the action, and directly tend to decrease or diminish the extent of the recovery by the plaintiff under the causes of action arising out of contract set up in the complaint and have a direct connection therewith. As we read the case of *Bannerot v. McClure,* 39 Colo. 472, there is nothing in that case which opposes the conclusion that the matters set up in the counter-claim of the pending action are properly interposed, either as a defense or counter-claim. On the contrary, that case is authority for our conclusion that this is a proper counter-claim. If the matters set up in this counter-claim are established, certainly there would be something due defendant from Potter's bank upon it, and it can be applied in diminution of plaintiff's claim, which is really the bank's, upon these notes, and

would be antagonistic thereto. This would come within the definition of a counter-claim announced in the *Bannerot case.* Quite in point also is *First National Bank of Hailey v. Bews,* 3 Idaho 486.

For the reasons given, the trial court erred in overruling in its entirety the motion for nonsuit. It also erred in striking out the new matter in the answer, and in vacating the order making Potter and the bank parties. The complaint is bad in not averring presentment and notice of dishonor.

The judgment must be reversed and the cause remanded for a new trial, proceedings thereat to be in harmony with the views expressed in this opinion. Plaintiff may amend his complaint as he may be advised, with leave to defendant to plead anew thereto. Potter and the bank must be retained as parties, with leave to them to plead to the matters charged against them, and like permission to defendant to plead.

*Reversed and remanded.*

Mr. JUSTICE MUSSER and Mr. JUSTICE GARRIGUES concur.