[No. 5808.]

## GUMAER ET AL V. BELL.

1. DEFAULT—*Excusable Neglect.*—The provisions of the code for the vacation of judgments by default are to be liberally construed. The design of the statute is to call into exercise the equitable powers of the court. An action was instituted in El Paso County against husband and wife, upon certain joint promissory notes. Service was made upon both defendants by delivery to the wife of a copy of the summons and complaint, at the joint residence in Fremont County. The answer was due on the 17th of August. The wife had no knowledge of the various transactions of which the promissory notes were a part, nor of what defense might be made to the action. The husband was then absent in the City of New York but his return was expected on or about the 10th of August. After this date the wife was informed that he would not return for a considerable time, and on the 13th she transmitted the papers to him, informing him of the service. The husband upon receiving the copy mailed them by special delivery letter to his attorney in Denver, instructing him

to enter an appearance. The attorney failed to receive the papers until late in the afternoon of the 19th. A default was entered on the 18th, and on the 25th of August final judgment against both defendants for over Eleven Thousand Dollars. The husband upon being informed of the situation immediately returned to Colorado and an application by both defendants, to vacate the default and for leave to answer, was promptly interposed, supported by affidavits showing the facts, and exhibiting a meritorious defense. *Held* that in view of the manner of the service, the husband's absence, the short delay in defendant's appearance and that plaintiff was not prejudiced by it the neglect was excused as to the husband—(475-479).

As to the wife it was held that in view of her inexperience in business, her ignorance of the defense, that she relied upon her husband in all business matters, that at the time of receiving the summons and complaint she justly expected her husband's speedy return, that her conduct was not different from what might be expected from any wife similarly situated, and considering also the large amount of the judgment, her default also was to be attributed to excusable neglect and vacated—(479, 480).

2. *——Discretion of the Court.*—The discretion of the court in determining an application to vacate a default is not a capricious or abitrary discretion, but is controlled by fixed legal principles, to be exercised in conformity with the spirit of the law, and in a manner to subserve, and not to impede or defeat, the ends of justice—(486, 487).

Whenever the court of review, upon examination of the facts, is convinced that the action of the court below, in such case, was not in conformity with the spirit of the law its single duty is to vacate the erroneous judgment—(487).

3. *——Meritorious Defense*—To vacate a default a mere showing of excusable neglect is not sufficient.

A defense to the action *prima facie* meritorious, must also appear.

And it must be stated with such fullness and particularity that the court can see that it is substantial, not technical, meritorious and not frivolous—(480).

A defense to part of the cause of action is sufficient—(480).

If it is made to appear that in justice to the defendant he is entitled to be heard this suffices. The case made held to be sufficient.

4. *——Conditions*—A judgment by default being reversed the cause was remanded with directions to the lower court to

allow an answer to be filed within a reasonable time to be fixed by that court, and upon payment by defendants of all costs which had accrued in that court, to the day upon which the defendant's motion to vacate the judgment had been denied in that court.

*Error to El Paso District Court*—Hon. ROBERT E. LEWIS, Judge.

Messrs. RICHARDSON & HAWKINS for plaintiffs in error.

Messrs. LUNT, BROOKS & WILCOX for defendant in error.

Mr. JUSTICE MUSSER delivered the opinion of the court:

On July 12, 1905, an action was commenced by the defendant in error as plaintiff against the plaintiffs in error as defendants, in the district court of El Paso county, upon two promissory notes, each dated October 18, 1894, the one for the sum of $4,800, the other for the sum of $2,500, payable respectively in fifteen months and one year after date, with interest at six per cent per annum.

On July 18, 1905, summons in said action was served upon the defendant, A. R. Gumaer, by leaving a copy of the summons and complaint in the action at his usual place of abode in Fremont county with a member of his family residing with him over the age of fifteen years, to-wit, his wife, the defendant, E. L. Gumaer, and, at the same time, service was made on the wife. The defendants had until and including the whole of the 17th day of August, at least, in which to appear in the said action. No appearance having been made by these defendants, default was entered against them on the 18th day of August. On the 21st day of August, the 20th being Sunday, the defendants filed a

motion for change of venue to Fremont county, on the ground that the plaintiff was a resident of the state of New York, and the defendants were residents of Fremont county, in which county service was made upon them, and the notes were payable in the state of New York, as appeared from the complaint. This motion was supported by affidavit as well as by the sheriff's return and complaint. On the 25th day of August, the court, on motion of plaintiff, without any notice to the defendants, struck the motion for change of venue from the files, and, on the same day, entered judgment against the defendants in the sum of $11,545.00. In due time, the defendants filed a motion to set aside the judgment and default, and, in support of this motion, the following facts appeared from affidavits filed in support thereof:

The defendant, A. R. Gumaer, at the time of the service of said summons, was, and for some time prior thereto had been, absent from the State of Colorado and in the State of New York. He expected to return home about August 10th from New York and so informed his wife, and for that reason she retained the summons and complaint, intending to deliver them upon her husband's return. He did not return on the 10th day of August, as expected, and afterwards his wife learned that he did not expect to return for some time, and on the 13th day of August she mailed the summons and complaint to her husband in New York, informing him that they had been delivered to her. Upon their receipt, he immediately mailed them, by special delivery letter, to his attorney in Denver, instructing him to at once enter an appearance in the case. The attorney received the letter with the papers about five o'clock p. m. on Saturday, August 19th, and immediately called by telephone for the district clerk, and the attorney for plaintiff at Colorado Springs, but could not reach either of them. The attorney, being unable to

reach the parties at Colorado Springs, mailed the motion for change of venue to the clerk of the district court at Colorado Springs on Saturday, August 19th, to be filed, and, at the same time, a copy thereof to plaintiff's attorney. On Monday, August 21st, the clerk called up the attorney at Denver and informed him that a default had been entered in the case, but no judgment. Thereafter, some correspondence took place between the respective attorneys. A. R. Gumaer had always acted for and as the agent of his wife in all business matters, and she had no knowledge of the defendant's defense to the action, or the subject matter thereof. She was without business experience and waited for her husband's return, expecting that he would take charge of the litigation. An affidavit of the defendants stated that they had a good and valid defense to the complaint; that they were in no way indebted to the plaintiff; that a small payment endorsed on said notes, as of July 18, 1899, had been made to the original holder; that they had come to the hands of the plaintiff and his immediate predecessor in title from the original holder many years after they became due, subject to offsets and counterclaims, in favor of the defendants, and set up in detail a long statement of their alleged defenses, offsets and counterclaims to the said notes, arising out of numerous transactions with the original holder through many years. The affidavit of merits was supplemented by the affidavit of the defendant's attorney, stating that, from the statements made to him by Mr. Gumaer, he believed that the defendants had a good and valid defense and that there should be an accounting between the parties. The motion to vacate the judgment and default was denied by the court on September 14, 1905, and to review the judgment and the action of the court in denying the motion, the defendants have brought the case here on error. The effect of the filing of the motion for

change of venue, after the default and before the entry of judgment, will not be considered, because defendants asked to be permitted to answer.

Section 81, Rev. Code, provides for the allowance, in furtherance of justice, of amendments, enlargement of time to plead, correction of mistakes, etc., and that the court may, upon such terms as may be just, and upon payment of costs relieve a party from a judgment, order or other proceeding taken against him through mistake, inadvertence, surprise or excusable neglect.

The defendants were duly served with summons in the action, and it was neglect on their part, under the circumstances, if they failed to respond thereto within the time required by law. The first actual knowledge, appearing in the record, that the defendant, A. R. Gumaer, had of the service of the papers was after August 13th, such a length of time after that date as was required for the papers to reach him by mail from Florence, Colorado to New York. On this point, the affidavit is not specific enough to satisfy plaintiff, but without being unduly critical and technical and ascribing to defendants' bad faith and an effort to deceive the court, no other conclusion can be fairly drawn from it, for on the whole it appears to be a narration of what Mrs. Gumaer did with reference to the matter after receiving the papers. The plaintiff took his default on the 18th, the first day that he could do so. To have saved it, the motion for a change of venue ought to have been filed on August 17th. The time intervening between his receipt of the papers and the last day for appearance was to be computed in hours, and he was away—the distance from Colorado to New York. In his affidavit, he says that when he received the papers he made a mistake in computing the time in which he had to appear in the action, and thought that the papers would reach the attorney by mail in time for an appearance, though he does not state how

or in what manner he made the mistake. The fact that Gumaer knew the notes were in an attorney's hands for collection about three months before the action was brought can have no bearing in showing the quality of the neglect after the action was commenced and process served. Whatever neglect there was on the part of A. R. Gumaer, prior to the time that he received the papers, so far as this record shows, was but constructive neglect, if such a term be permitted, or imputed neglect, if the negligence of his wife can be imputed to him. As soon as he received the papers he evinced at once a desire to defend the action. After the default, in response to the notice of his attorney, he came home quickly, put the attorney in possession of the facts, and his defense, and had the motion to set aside the default and judgment made and promptly filed and heard. If, on the whole showing as made, in view of the manner of service, Gumaer's absence from the state, the very short time that the appearance of defendants was delayed, the fact that plaintiff was not disadvantaged thereby, his neglect was not excusable within the spirit of our code, as hereafter shown, then excusable neglect cannot be recognized.

The wife, E. L. Gumaer, is shown to have been without business experience. Her husband was her agent in the conduct of her business, and she relied and depended on him. He had carried on the transactions concerning these old notes and the transactions out of which arose the alleged defense thereto, and she had no knowledge of them. She expected, and it is shown, that she had a right to expect that her husband would return by the 10th of August, in ample time to appear in the action and make defense. When he did not come, and learning that he would not return for some time, inexperienced in business and accustomed to rely on her husband, she did what such a woman was likely to do—sent the papers to him for attention, informing

him that they had been delivered to her. Her neglect, such as it was, was unintentional, and apparently ignorantly done, and committed, no doubt, in endeavoring to do what she thought was best to do. This record does not disclose but that her negligence was the result of the best impressions of an inexperienced woman, accustomed to rely on her husband. Under such circumstances, the degree of negligence in the wife can not be measured as though she were a stranger dependent on herself. Her conduct brought ill only to herself and her husband. Her husband was excusable. Both have shown merit. If he is let in to defend and his wife not, the result may be a judgment in his favor, or a greatly reduced one against him. Then would the present judgment against the wife stand only as a penalty against her for unintentionally managing the matter so that she failed by two or three days in getting in an appearance. Eleven thousand dollars is too great a penalty for such a slight offense, when under the code reasonable terms could have been imposed, and the possibility that such an injustice may be worked out is enough to excuse this woman and to let her in with her husband to defend.

But the authorities hold that it is not sufficient to show that the neglect, which brought about the default, is excusable. The defendant must also show a meritorious defense to the action. It is sufficient to show that the defense is *prima facie* meritorious, and must be stated so that the court will be enabled to see that it is not frivolous. Where a meritorious defense is shown to part of plaintiff's cause of action it is sufficient. 6 Ency. Pl. and Pr., 185-188. It is said that when a sworn answer is filed it will be accepted as a sufficient affidavit of merits and it will be examined by the court only to determine whether it is frivolous and not to ascertain whether it will prevail if established on a new trial, unless it is apparent that it can-

not possibly prevail. *ib.* 188. In line with these expressions, our court of appeals, on the question of showing merits said:

"There must be sufficient showing to the court to demonstrate the possibility, at least, that if the judgment was vacated and a new trial had, the result would be different." *Donald v. Bradt,* 15 Colo. App. 414 at 416.

From this it is seen that if the showing is of a defense that is substantial, not technical; meritorious, not frivolous; and that may change the result upon trial, it is sufficient. We cannot pause to analyze, in this opinion, the long affidavit filed, nor try the case in advance. The showing demonstrates the possibility, at least, that on the trial the result will be different and is substantial and meritorious in the sense that such a showing is required to be. The notes sued on in this case were each due more than nine years before the commencement of the action. They came into the hands of the plaintiff's father from the original holder several years after they became due, and the showing is, that many transactions took place between the original holder and the defendants before the notes were transferred, giving rise, it is claimed, to liabilities chargeable against the notes. Money was paid out by the defendant, A. R. Gumaer, for the use of the original holder at his request, it is said. Collateral of value, belonging to the said defendant and securing the notes, is alleged to have been converted by the plaintiff to his own use, all of which clearly demonstrates that in justice and fairness the defendants ought to have had an opportunity to be heard and submit their claims against the old notes to the court for adjudication. The views herein expressed with regard to this case are in harmony and are supported by the spirit of our code and the intendments of section 81.

Section 478, Rev. Code, says, that the provisions of the code and all proceedings under it should be liberally construed to assist the parties in obtaining justice. In 6 Ency. of Pl. and Pr., 154, it is said, that "a statue providing for the opening or vacation of a judgment by default is remedial and should be liberally construed by the courts, especially in those cases where such a construction is calculated to advance justice."

Section 81 of our code is practically the same as what was formerly the 68th section of the Practice Act of California, and the portion thereof relating to a relief from a judgment or order on account of inadvertence, surprise or excusable neglect is precisely the same in both. Speaking of this section, the court said in *Roland v. Kreyenhagen,* 18 Cal., 455:

"The power of the court should be freely and liberally exercised under this and other sections of the act to mould and direct its proceedings, so as to dispose of cases upon their substantial merits, and without unreasonable delay, regarding mere technicalities as obstacles to be avoided, rather than as principles to which effect is to be given in derogation of substantial right. *   *   * It can also usually prevent unjust or unfair advantages, or serious injury arising from casualties or inadvertence. The design of the act was to call into requisition its equitable powers in this respect."

And in *Watson v. S. F. & H. B. R. R. Co.,* 41 Cal. 17, speaking of applications for relief against default judgments, it is said that:

"Applications of this character are addressed to the discretion—the legal discretion—of the court in which the default has occurred, and should be disposed of by it as substantial justice may seem to require. Each case must be determined upon its own peculiar facts, for perhaps no two cases will be found to present the same circumstances for consideration. As a gen-

eral rule, however, in cases where, as here, the application is made so immediately after default entered as that no considerable delay to the plaintiff is to be occasioned by permitting a defense on the merits, the court ought to incline to relieve. The exercise of the mere discretion of the court ought to tend in a reasonable degree, at least, to bring about a judgment on the very merits of the case; and when the circumstances are such as to lead the court to hesitate upon the motion to open the default, it is better, as a general rule, that the doubt should be resolved in favor of the application."

Viewing the present case in the light of these authorities and intendments of the code, what is there to show that justice was done by not setting aside this judgment and permitting the defendants to put in their defense and the case to be heard on its substantial merits? While the defendants were guilty of neglect, yet, in the light of all the circumstances of the case, it can truly be said to be excusable. They have shown sufficient merit as has been seen. It has not been pointed out, nor can it be perceived, that any injustice would have been wrought to plaintiff had the judgment been set aside on September 14th. True, if the defendants had been let in and the case tried in September, he may not have obtained as large a judgment as he had obtained by default a few days before, in August, or he may have been defeated altogether. For plaintiff to have lost out on a fair trial is not an injustice. If error would have been committed against him he had the right to have it corrected on review. The truth is, his position was in no manner prejudiced by the short delay of defendants—indeed it could not be. He was just as able to prove his case on September 14th as he had been on August 25th. If his cause was just he no doubt would have prevailed. If his cause was unjust he ought not to have prevailed. On the

other hand, great injustice may have been done defendants by denying this motion. It is possible that the defendants would have prevailed, or they may have succeeded in materially lessening the judgment against them. If they could have done so, then the refusal to vacate worked a positive injustice to them and this judgment for over $11,000 stands as a penalty against them for having failed by two or three days to put in an appearance, for which failure they were excusable. This is not assisting the parties in obtaining justice, nor is it calculated to advance justice. Under section 81, the court could have set aside the default upon resonable terms, more or less severe, by which the defendants would have been sufficiently penalized, if a penalty was proper. After this review of the facts and circumstances of this case, there remains no reason why it ought not to have been heard on its substantial merits. The contentions and arguments of the plaintiff savor of harshness out of harmony with the spirit of the law, as shown by the above authorities. He insists that the court should protect his rights. There is no question about that. Courts, however, are as much bound to protect the rights of the defendants as those of the plaintiff. After all, viewed in the light of a remedial statute, the right of the plaintiff is a technical one. It partakes more of the nature of an advantage than of a substantial right. He took the default subject to being set aside under section 81 of the code. He obtained his judgment after the defendants had filed a motion in the case—a motion that probably would have ousted the court of jurisdiction had it been filed before default—and we do not decide what effect it had when filed afterwards. This motion, at least, apprised the court and plaintiff that the defendants were on hand ready to contest the action, after a delay of not to exceed three days, and it was deemed necessary to strike it from the files without notice to

the defendants, in order to take judgment against them. It may be that the plaintiff was within his strictly technical rights. Such rights should have due and weighty consideration at all times, and in proper cases preserved. But it must be remembered that plaintiff secured the rights he did, knowing them to be and under circumstances that made them subject to judicial scrutiny, bringing in view all the circumstances of the whole case, illuminated by the remedial provisions of section 81 and liable to be taken away by that section, in the application of which, as said by the Supreme Court of California, the equitable powers of a court are called into requisition, and technicalities are regarded as "obstacles to be avoided, rather than as principles to which effect is to be given in derogation of substantial rights."

The authorities cited by plaintiff have been examined. In none of them are the facts as in this case, nor do the delinquent parties appear so excusable, nor does it so plainly appear that no damage or injustice would have inured to the plaintiff and that injustice might have inured to the defendant. It is true that these authorities announce the rule to be that a motion to vacate and set aside a default and judgment thereon is addressed to the sound discretion of the trial court, and its ruling thereon will not be disturbed, unless it clearly appears that the discretion was abused. The rule was announced in *Bannerot v. McClure*, 39 Colo. 472. There, however, default was not entered until more than sixteen months after service, and the motion to set aside was not made until nearly eight months after the default was entered, and the court said that the affidavit, filed in support of the action, utterly failed to show any excuse for the neglect, and that no attempt was made to show a meritorious defense. The rule was announced in *Morrell Hdw. Co. v. Princess G. M. Co.*, 18 Colo. App. 54. In that case, the com-

plaint was against the court for setting aside the default and judgment. The affidavit in support of the motion was not satisfactory, but the showing of merits was clear, and the court of appeals said it could not say that the lower court abused its discretion in setting aside the judgment and default. The rule was announced in *Donald v. Bradt, supra*; but in that case the motion was not made until nearly six months after judgment, and the court thought that that was an important factor to consider; besides, the court was clear that the showing of merits was insufficient on its face.

In *Elliott v. Quinn,* 40 Colo. 329, this court held that the default ought to have been set aside, and reversed the judgment because it had not been, yet in that case the matter rested in the sound discretion of the court as much as in the case at bar. So in *State Board of Agriculture v. Meyers,* 13 Colo. App. 500. In some of the authorities cited from other states there was a conflict in affidavits as to the degree of negligence, and the court announced the rule under such circumstances. The nearest approach to the facts in this case is in *Jordan v. Hutchinson,* 39 Wash. 373. There, the appellants actually knew of and wrote a letter about the case to an attorney in Seattle thirteen days before the default was entered. Besides, it appears from that case that the code of Washington did not provide for excusable neglect, but provided that the court may, in its discretion, set aside any default upon affidavit, showing good and sufficient cause. The court said the record showed no more than neglect without reference to whether it was excusable or not, and for that reason no sufficient cause was shown. Under our code, excusable neglect is a sufficient cause, and had the code of Washington been the same, the decision might have been different. The discretion intended by the rule "is not a capricious or arbitrary one, but is an impartial discretion, guided and con-

trolled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." *Bailey v. Taafe,* 29 Cal. 424.

Appellate courts are not precluded by the rule from reviewing the exercise of discretion and in proper case correcting it. Each case must be determined upon its own facts, for no two cases are alike, and all the facts and circumstances of each case must be scrutinized. When a court of review, upon an examination of these facts, becomes convinced that the exercise of discretion by the lower court, in a particular case, is not in conformity with the spirit of the law and has not been properly exercised, there is but one duty to perform and that is, to correct the error and send the case back for trial. The reversal of this judgment is well within the rule announced by the authorities.

The former opinion is withdrawn and this opinion filed in lieu thereof, but the conclusion heretofore reached will be adhered to, and that is, that the judgment of the district court is reversed and the cause remanded, with instructions that upon payment by the defendants, within thirty days, of all the costs that had accrued in the action, to and including the 14th day of September, 1905, the judgment and default in the district court be set aside and these defendants given leave to file their answer to the complaint in the action, as they asked in their motion to vacate, within such reasonable time as may be fixed by the court. The motion for rehearing is denied.

*Reversed and Remanded.*

Motion for rehearing denied.

Decision *en banc.*

Mr. JUSTICE GABBERT and Mr. JUSTICE GARRIGUES dissent.

CHIEF JUSTICE CAMPBELL not participating.

Mr. JUSTICE GABBERT dissenting:

A motion to set aside a default is addressed to the sound discretion of the trial court, and its judgment thereon will not be disturbed unless it clearly appears that there was an abuse of such discretion. *Bannerot v. McClure*, 39 Colo. 472; *Morrell Hdw. Co. v. Princess G. M. Co.*, 16 Colo. App. 54.

Tested by this rule, which is universal, not only in this, but in every other jurisdiction, it is manifest the judgment of the district court, refusing to set aside the default, should not be disturbed.

The note sued upon had been in the hands of counsel for plaintiff several months before suit was brought. It appears from the record that through correspondence between counsel now representing the respective parties, Mr. Gumaer had conferred with his present counsel regarding these identical notes something like four months before action was brought against him. In the affidavit filed in support of the motion to set aside the default, Mrs. Gumaer says that she expected her husband to return to their home at Florence, in this state, about August 10th, or only seven days before the time for entering an appearance would expire; that he did not return, as expected, and two or three days later, namely, on the 13th of August, having learned that he would not return for some time, she mailed the papers to him in the City of New York, or only four days before the time when the process served required an appearance to be made. What steps she took, or how she ascertained when he would return is not stated. But four days remained after she started the papers to New York from Florence, in this

state. She must be presumed to have known when an appearance was necessary. She does not state she did not. What excuse does she offer for not communicating with her husband regarding the matter in a manner which would have advised him that suit had been commenced, and enabled him to have communicated with counsel in ample time to have prevented a default? On this subject the record is entirely silent. Parties desirous to be relieved on the ground of excusable neglect must show diligence. She has failed to make such a showing. Mr. Gumaer knew of these notes; knew that they were in the hands of attorneys for collection; had employed counsel to represent him; and a brief message by wire from his wife would have sufficiently advised him of the situation, so that he could, by the exercise of reasonable diligence, have taken steps to prevent a default. But the failure to exercise diligence does not stop with the neglect of Mrs. Gumaer. When the papers reached her husband in New York, after being mailed to him from Florence on the 13th of August, common knowledge with respect to the distance between the two points and the time it requires for mail to go from one point to the other warrants the assumption that but little time would remain for entering an appearance after he received the papers by mail, and which, from his own statement, or at least, from the results that followed, did not leave him sufficient time to communicate with his attorneys by mail, and yet, he mailed the papers to them in the city of Denver; but they did not reach their destination until August 19th. What date Mr. Gumaer received the papers he does not state, but contents himself with the statement that he thought they would reach Denver in time. What excuse does he offer for pursuing this course? Why did he not wire his attorneys, with whom, months before, he had conferred regarding the notes? The only one offered is, that he made a mistake in

computing the time when he would have to appear. How was he mistaken? That he does not attempt to explain. The rule is, that a party seeking to set aside a default must affirmatively show diligence and state facts which will excuse his neglect. Conclusions and abstract statements which might raise a surmise are not sufficient. The court to which an application to set aside a default is addressed cannot make apologies or invent excuses for a defaulting defendant. He must unequivocally state the facts which clearly establish excusable neglect.

And here it should be observed that the statement in the majority opinion to the effect that the first actual knowledge disclosed by the record that Gumaer had of the pendency of the action, was when he received the papers in New York, is not justified. Mr. Gumaer does not say so, nor any one else for him. True, the record is silent on the subject, but silence does not affirmatively establish a fact which, if material, it is encumbent upon him to prove.

The statement in the affidavit of the defendant to the effect that Mrs. Gumaer was without business experience, and was not sufficiently advised regarding the subject matter of litigation so that she could intelligently consult with counsel, is of no moment. In the first place, it appears that Mr. Gumaer had already consulted counsel with respect to the notes; and, had his wife exercised reasonable diligence in advising him of the service of process, as she was in law bound to do, he could readily have taken steps to prevent a default; and next, the want of knowledge on the part of Mrs. Gumaer as to defenses which could be interposed, did not excuse her from taking steps to have an appearance entered, or notifying her husband in time after service of process, so that he could have communicated with counsel.

Reduced to its final analysis, all there is, material, in the affidavit of defendants, is simply this: Mrs. Gumaer held the process until the 10th of August, or until within seven days of the time when appearance would have to be entered, expecting her husband would return about that time. When he did not, she waited three days longer, or until the 13th, only four days before the time for appearance would expire, and then mailed the papers to her husband in New York, when he, in turn, mailed them to his counsel in the city of Denver. They did not reach their destination in time. If this shows such diligence on the part of the defendants as excused their failure to enter an appearance in the time fixed by the process, then they are excused; but it is submitted that it does not. Parties cannot be permitted to disregard the process of our courts, and after default is taken against them, come in and have it set aside, unless it affirmatively appears that they exercised due diligence to prevent a default. The record in this case not only shows that the court did not abuse its discretion in refusing to set aside the default, but that, had it done so, it would have been an abuse of discretion to the prejudice of the plaintiff.

The judgment of the district court in refusing to set aside the default should be affirmed.