## No. 11,451.

MOUNTAIN STATES SILVER MINING CO., ET AL. *v.* HUKILL.

Decided March 1, 1926.   Rehearing denied March 22, 1926.

Action for damages for fraud in the sale of corporate stock.   Judgment for plaintiff.

### *Reversed.*

### *On Application for Supersedeas.*

1. PRACTICE AND PROCEDURE—*Oral Stipulations.*   While parties are presumed to know the general rule of courts that they do not enforce oral agreements not made in their presence, in the instant case, a judgment procured in violation of assurances of counsel that no court action would be taken pending negotiations for a settlement, is set aside.

2. JUDGMENT—*Violation of Oral Agreement.*   Where plaintiff neglected to press his suit for more than four years and then took judgment in the absence of defendant and during a time negotiations were pending for a settlement and in violation of assurances of plaintiff's counsel that no court action would be taken during the pendency of the negotiations, it is held that the overruling of a motion to vacate was a gross abuse of discretion on the part of the trial court.

*Error to the District Court of the City and County of Denver, Hon. George F. Dunklee, Judge.*

Messrs. SABIN, McGLASHAN & SABIN, for plaintiffs in error.

Messrs. QUAINTANCE & QUAINTANCE, Mr. JOHN T. BOTTOM, for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

JULY 28, 1921, plaintiff Hukill brought this action in the district court of Yuma county to recover as actual damages $44,000 and as exemplary damages $20,000 sustained by him as the result of alleged fraudulent representations made to, and deceit practiced upon, him by the defendants in their sale to him of capital stock in the defendant mining company. The case was transferred to the district court of the City and County of Denver, February 18, 1922. October 11, 1922, the cause was dismissed on stipulation. On plaintiff's application it was reinstated March 5, 1923. The issues were finally joined, somewhat tardily, and the cause was placed on the trial calendar, the defendants themselves being personally notified, their attorneys of record having theretofore withdrawn their appearance. Late on a Saturday afternoon, October 24, 1925, the last day of the term for jury trials until a new jury was drawn and impaneled, the trial of a case then on being temporarily suspended at the request of plaintiff's counsel, the court heard the testimony of the plaintiff himself, no one appearing for defendants, found the facts in plaintiff's favor and gave judgment or decree against all of the defendants in the sum of $29,750, and costs and a body judgment against the individual defendants, committing

them to the county jail for a period of not more than one year, with the usual proviso that on payment of the judgment or filing of a statutory "poor person" affidavit, they might be released. When they heard of this judgment four days after the same was rendered defendants employed counsel who at once filed a motion, under section 81 of our Procedure Code, to vacate the judgment on the ground that the plaintiff and his attorney caused it to be taken in violation of the terms and conditions of assurances and an agreement which they gave to and made with defendants' counsel not to take judgment in the case, which were given and made pending a settlement of the controversy and in violation of the express promises made by plaintiff's counsel not to take judgment, and that the cause would be dismissed. This application was supported by the affidavits of the defendants and a counter-affidavit was filed by plaintiff's attorney, to which were attached several documents, controverting the affidavits filed in behalf of the defendants as to some material matters. The court denied the motion and allowed the judgment as rendered to stand. Defendants are here with their writ of error to review the final judgment and in connection therewith the subsequent proceedings and order denying the motion to vacate.

In view of our conclusion that the court grossly abused its discretion in not re-opening the case for trial on the merits, we deem it in the interests of both parties upon this application for a supersedeas that final decision be made. The principal reason for the foregoing detailed statement of the progress of, and proceedings in, the case from the time complaint was filed in July, 1921, until final judgment in October, 1925, is that it discloses that for a period of more than four years the plaintiff was not diligent in pressing for trial. That of itself is not the only reason for holding that the court abused its discretion in refusing to vacate the judgment, but it

is a circumstance entitled to consideration in reaching
a decision. It is not necessary to summarize at any
length the contents of the conflicting affidavits. There
are some circumstances which savor of a disregard by
the defendants of their duty to the court as litigants.
We are not inclined to countenance some of their acts
or wholly to excuse them for not sooner employing coun-
sel to represent them in the case after the counsel whom
they had once employed had withdrawn their appear-
ance. Neither do we overlook the fact that a trial judge
is more likely than a reviewing court to be in possession
of certain material facts of which trial courts take judi-
cial notice and which are not, and cannot be, embodied
in written records upon which alone reviewing courts
act. Nevertheless, after careful reading of this record,
we have reached the conclusion already indicated that
the trial court abused its discretion and it should have
reopened the case for a trial on the merits. After the
cause was dismissed by stipulation of the parties in
October, 1922, and before it was reinstated nearly five
months later, relying on such dismissal some of the
defendants, possibly in connection with other persons,
expended a large sum of money upon the mining prop-
erty whose stock had been sold to the plaintiff. Mean-
while a companion case to this, known as the Kirkland
case, where the questions in issue are said to be sub-
stantially the same as in the pending case, defendants be-
ing in whole or in part the same in both cases, and plain-
tiff's counsel here being attorney for plaintiff Kirkland,
a trial was had in another division of the same court,
which resulted in a directed verdict for the defendants.
It was after this directed verdict was ordered and judg-
ment pronounced upon it that the plaintiff Hukill con-
sented to the dismissal of this case which afterwards he
caused to be reinstated. In April, 1923, counsel who had
been acting as such for the defendants, withdrew their
appearance and thereafter defendants have not been
represented by counsel until the motion to vacate was

filed. After the cause was reinstated, as above mentioned, various negotiations between the defendants themselves and the plaintiff's counsel were initiated, with a view to a settlement of the controversy. Counsel for the plaintiff knew that defendants' attorneys had withdrawn their appearance and so felt free to deal directly with the defendants themselves. Different propositions were made from time to time as to the terms of the settlement and the negotiations with respect thereto were continued down to, and including the forenoon of, the day that judgment herein was taken, but no settlement was reached. The defendants state that they were assured by plaintiff's counsel at different times during these negotiations, upon which they relied and were misled, that the case would not be set for trial, or tried, so long as negotiations were pending and undetermined; and, in the event of failure of the parties to agree, the defendants would be given time to employ counsel and prepare for trial. Defendants say that so relying upon these promises and assurances of plaintiff's counsel, they did not employ counsel and after they, or some of them, received notice that the case would be set for trial they still were assured, and had reason to, and did, believe, down to the time judgment was rendered, that the plaintiff's counsel would not press for trial until they had an opportunity to employ counsel of their own selection and prepare for trial. They, therefore, say that in view of these facts they were entitled to have the judgment set aside and should be given a reasonable time to prepare for trial upon the merits, which they are ready to enter upon at the convenience of the court.

As already indicated, as to some matters that may be considered as material there is a conflict in the affidavit evidence which we shall not try to reconcile, for enough is admitted by plaintiff's counsel to justify and require a new trial on the merits. That numerous conferences between counsel and the defendants had taken

place with a view to a compromise of the controversy and that no decision was reached, and that the negotiations were pending on the very day of the trial, sufficiently appear without dispute. Courts favor decisions on the merits. A trial at which only one of the parties appears is not likely in any case to result in a decision made upon all of the facts that a court is entitled to have before it. Even if the defendants were negligent in relying on oral assurances of their adversary—and parties are presumed to know the general rule of courts that they do not enforce oral agreements of counsel not made in their presence—and chose to negotiate without the aid of an attorney, it is evident that there was, at least, a misunderstanding between plaintiff's counsel and the defendants who are laymen, not lawyers, and that the defendants believed they were safe in not employing counsel and in not making preparations for trial, but might rely upon their understanding that in case of a failure of settlement they would have time through counsel, to be later employed, to prepare for the trial on the merits. They also had reason to believe that plaintiff's counsel had authority from his client to discuss and decide the terms of the settlement. Considering the fact that there was a sworn answer of defendants on file, which traversed all the material allegations of the complaint and containing, besides, an affirmative defense constituting an equitable plea of estoppel, and that the answer does not appear to be frivolous or on its face false or deceptive, and further considering the amount of the money judgment and the commitment of the individual defendants to jail, the misunderstanding that arose as to, if not in violation of, the agreement and assurances of plaintiff's counsel and as to trial, the further facts that plaintiff himself allowed the cause to remain for several years on the docket without urging a trial, and that a similar case involving substantially the same issues resulted in a directed ver-

dict against the plaintiff, we are convinced that the trial court should have set aside the judgment rendered and awarded a new trial on the merits. If plaintiff has a good case he will ultimately succeed; if he has not a good case, he ought not to recover. At all events the additional costs and expenses that would be incurred by him in case of a new trial should not operate, under all the peculiar circumstances which the record discloses, to deprive the defendants of the opportunity of submitting their defense to the court in support of their answer and counterclaim along with the evidence of the plaintiff in support of his complaint. We think the case of *Gumaer v. Bell,* 51 Colo. 473, 119 Pac. 681, and other cases in this court, fully warrant our conclusion. Particularly in point is *Directory Company v. App,* 4 Colo. App. 350, 35 Pac. 985. Judge Thomson in his opinion said that: ''Neglect which arises from reliance placed by a party upon assurances given him by the opposing counsel, is excusable within the meaning of the law.'' The instant case is essentially different from *Diebold v. Diebold,* 79 Colo. 7, 243 Pac. 630, recently decided by us. A comparison of the facts in that case with the facts of this clearly differentiate them.

Such applications as this, however, are made upon terms. We shall, therefore, under the authority of our Rule 51 order, and hereby do order, that the costs of prosecuting this writ of error in this court shall be taxed to the plaintiffs in error; as to the costs incurred below on the motion to vacate, the trial court may exercise its own judgment. The order or judgment denying defendants' motion to vacate is, therefore, set aside with instructions to the district court to enter an order in lieu thereof granting the motion to vacate the judgment and re-open the cause for trial on the merits. The application for supersedeas is denied and the judgment is reversed with instructions.