Linda Lou CRAIG, Petitioner,

v.

Elbert E. RIDER, Miles Ericson Craig, Devisees in the Estate of Lulu Ann King, Deceased; United States Bank of Grand Junction, Personal Representative of the Estate of Lulu Ann King, Deceased, Respondents.

No. 81SC45.

Supreme Court of Colorado, En Banc.

Sept. 27, 1982.

Nelson, Hoskin, Groves & Prinster, John W. Groves, Gregg K. Kampf, Grand Junction, for petitioner.

Harshman & Deister, Thomas J. Harshman, Thomas M. Deister, Grand Junction, for respondent Elbert E. Rider.

Dufford, Waldeck & Williams, Robert I. Williams, Grand Junction, for respondent Miles Ericson Craig.

Williams, Turner & Holmes, Anthony W. Williams, Grand Junction, for respondent U. S. Bank of Grand Junction.

LOHR, Justice.

The central issue in this case is the standard to be applied to determine whether an interested party has shown "good cause" under section 15–12–413, C.R.S.1973, to support a motion to vacate an order admitting a will to probate in a formal testacy proceeding. The trial court denied the motion of Linda Lou Craig, the decedent's granddaughter and sole heir, to set aside the court's order admitting the will of Lulu Ann King to probate. The Colorado Court of Appeals affirmed in *Craig v. Rider,* 628 P.2d 623 (Colo.App.1980), and we granted certiorari. We conclude that the trial court abused its discretion by ruling that Linda Lou Craig did not establish that her delay in objecting to the probate of the will was excusable and in holding that, as a result, good cause to vacate the probate order was not shown. We therefore reverse the order of the trial court and direct that the order admitting the will to probate be vacated and that the objections to probate be considered on their merits.

Lulu Ann King died on May 20, 1978, at the age of 94, leaving an estate worth approximately one million dollars. A purported will dated August 20, 1975, was filed in Mesa County District Court, and the court set a hearing for June 19, 1978, to determine whether the will should be admitted to probate.[1]

Lulu Ann King had been twice widowed. One child, Harry Ericson, was born of her first marriage, and he in turn had a single child, Linda Lou Craig. No children were born of the decedent's second marriage.

---

1. A May 2, 1969, will, naming Linda Lou Craig and her father, Harry Ericson, as beneficiaries, was also filed but was not offered for probate. Additionally, there exists an August 15, 1975, holographic will containing a disposition scheme substantially similar to that set forth in the August 20, 1975, will. The holographic will was not filed but was received in evidence at the hearing on the motion to set aside the order of probate.

Ericson predeceased Lulu Ann King, making Linda Lou Craig the decedent's sole heir. The filed will left half of the decedent's estate in trust to her great grandchild Miles Craig, a son of Linda Lou Craig.[2] The other half of the estate was willed to Bert Rider, a friend who had lived at the decedent's farm in her latter years.

The attorney for United States Bank of Grand Junction, the personal representative named in the will, sent notices of the probate hearing to Linda Lou Craig and requested that she sign forms waiving service and consenting that the hearing be held on the date set. She did so, on her own behalf and as representative of her minor son Miles. Linda Lou Craig filed no objection to the probate of the will and did not attend the hearing. On June 21, 1978, after the hearing, the court ordered the will admitted to probate.

On July 19, within 30 days after admission of the will, Linda Lou Craig filed a motion to vacate the order of probate pursuant to section 15–12–413, C.R.S.1973, alleging that Lulu Ann King lacked testamentary capacity and was under undue influence when she executed the will. The motion also claimed that the factual grounds for these contentions were not discovered until after the probate hearing, diligence was used in learning the new facts, and any delay in obtaining such knowledge was excusable. Additional facts relating to the bases for the movant's challenge to the probate of the will are set forth later in this opinion.

The trial court decided that the hearing on the motion should be bifurcated. The court elected to consider first the legal sufficiency of the reasons for delay in asserting the claim, ruling that if adequate cause for the late filing of the objection was established it would then go on to consider whether Linda Lou Craig could make a prima facie showing that her objections to the probate of the will were meritorious. At the hearing on delay the court permitted the presentation of evidence about Linda Lou Craig's acquisition of information con-

cerning the decedent's mental condition up to the time when the motion to vacate the probate order was filed. The court received the evidence for the limited purpose of evaluating whether the movant's delay in objecting to probate of the will was excusable. After the hearing the court found "that there is neither good cause shown nor due diligence exemplified by [Linda Lou Craig] of the dignity and kind required to vacate the order of Court admitting the will of Lulu Ann King to probate," and denied the motion to vacate the order. In further support of its ruling, the district court held that Linda Lou Craig was estopped to challenge the probate order, apparently based on her execution of the waiver of service and consent to the hearing on admission of the will to probate.

On appeal, the Colorado Court of Appeals affirmed. Analogizing to the standards applicable to determine whether a default judgment should be set aside for excusable neglect, the court of appeals held that in order to establish good cause to set aside an order of probate pursuant to section 15–12–413, C.R.S.1973, the moving party must show both excusable neglect and a meritorious defense. It further held that the trial court's decision to bifurcate the hearing and try the excusable neglect issue first was proper. Although the trial court couched its findings in terms of both excusable neglect and due diligence, the court of appeals determined that adequate evidence supported the finding that Linda Lou Craig had not established excusable neglect, so the finding was binding on appeal.

On certiorari, Linda Lou Craig agrees that the standard for setting aside a default judgment should apply to good cause determinations under section 15–12–413, C.R.S. 1973, but contends that the court of appeals neither correctly stated the test nor properly applied it in this case. Linda Lou Craig asserts that "substantial justice" is the correct formulation of the standard and contends that three factors must be weighed in the balance to determine whether substan-

**2.** Linda Lou Craig also had a younger child, who was not named in the decedent's will.

tial justice will be achieved by vacating a probate order: (1) excusable neglect, (2) existence of a meritorious defense, and (3) convenience and reliance of the court and other parties. Furthermore, Linda Lou Craig contends that each individual factor cannot be tested in isolation but must be considered together with the others to determine whether substantial justice will be served by setting aside an order of probate. As a result, her argument continues, the trial court erred in basing its ruling solely on the absence of a showing of an adequate reason for delay in asserting the objection. Linda Lou Craig also asserts that the trial court erred in concluding that she had not established excusable neglect for her delay in objecting to the probate of the will.

Although we do not agree entirely with the movant's analysis, we conclude that the trial court abused its discretion in holding that excusable neglect was not established for the late filing of the challenge to the validity of the will. We also hold that the movant adequately met the other criteria for setting aside an order admitting a will to probate, with the result that Linda Lou Craig's motion to vacate should have been granted.

I.

The General Assembly has prescribed the time within which an order in a formal testacy proceeding may be challenged and the grounds for such a challenge in section 15–12–413, C.R.S.1973, which provides:

> For good cause shown, an order in a formal testacy proceeding may be modified or vacated within the time allowed for appeal.

In the present case, a motion to vacate was filed 28 days after issuance of the order admitting the will to probate, and all parties acknowledge that it was filed within the time prescribed by the statute. *See*

section 15–10–304, C.R.S.1973; C.A.R. 4. The issues before us are whether the trial court utilized the correct criteria in determining "good cause shown" or erred in applying those standards.

The court of appeals held that motions to vacate formal testacy orders are analogous to motions to vacate default judgments under C.R.C.P. 55(c) and 60(b). It therefore found it appropriate to look to cases decided under those rules for guidance in reviewing the trial court's ruling on the "good cause shown" issue. This holding is consistent with section 15–10–304, C.R.S.1973, which states that, absent contrary or inconsistent provisions in the Colorado Probate Code, "the Colorado rules of civil procedure including the rules concerning vacation of orders and appellate review govern formal proceedings under [the Colorado Probate Code]."[3] C.R.C.P. 55(c) specifies the standards for setting aside a default judgment. It provides:

> *For good cause shown* the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b). (Emphasis added.)

In turn, C.R.C.P. 60(b) states, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or *excusable neglect;* ....
> (Emphasis added.)

The underlying goal in ruling on motions to set aside default judgments is to promote substantial justice. *CF&I Steel Corp. v. Robb,* 188 Colo. 155, 533 P.2d 491 (1975); *F & S Construction Co. v. Christlieb,* 166 Colo. 67, 441 P.2d 656 (1968); *Walker v. Associates Loan Co.,* 153 Colo.

---

3. In situations where, as here, the interested party waives service and consents that a hearing be held on a specified day to consider admission of a will to probate, we recognize that the analogy to default judgments is not precise. We believe, however, that application of the standards of C.R.C.P. 55(c) is consistent with

the legislative intent in enacting section 15–12–413, which does not limit relief to instances where consent to the hearing was not obtained. Execution of a consent can properly be considered as one of the factors bearing on whether a movant has shown good cause to vacate an order of probate.

261, 385 P.2d 421 (1963); *Burlington Ditch, Reservoir & Land Co. v. Fort Morgan Reservoir & Irrigation Co.,* 59 Colo. 571, 151 P. 432 (1915). Whether substantial justice will be served by setting aside a default judgment on the ground of excusable neglect is to be determined by the trial court in the exercise of its sound discretion. *E.g., Coerber v. Rath,* 164 Colo. 294, 435 P.2d 228 (1967); *Gumaer v. Bell,* 51 Colo. 473, 119 P. 681 (1911). Where that discretion is abused, this court will set aside the trial court's order. *E.g., F & S Construction Co. v. Christlieb, supra; Coerber v. Rath, supra.*

An early case explained the nature of the discretion to be exercised by a court in ruling on a motion to set aside a default judgment:

> The discretion intended by the rule "is not a capricious or arbitrary one, but is an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." *Bailey v. Taaffe,* 29 Cal. 423, 424.

*Gumaer v. Bell,* 51 Colo. at 486–87, 119 P. at 685. *Accord, Burr v. Allard,* 133 Colo. 270, 293 P.2d 969 (1956).

■ Our cases have developed the criteria by which the discretionary decision is to be made. These include whether the neglect that resulted in entry of judgment by default was excusable, *Coerber v. Rath, supra; Gumaer v. Bell, supra; Temple v. Miller,* 30 Colo.App. 49, 488 P.2d 252 (1971), whether the moving party has alleged a meritorious defense, *Coerber v. Rath, supra; Gumaer v. Bell, supra; Temple v. Miller, supra,* and whether relief from the challenged order would be consistent with equitable considerations such as protection of action taken in reliance on the order and prevention of prejudice by reason of evidence lost or impaired by the passage of time, *see Coerber v. Rath, supra; Drinkard v. Spencer,* 72 Colo. 396, 211 P. 379 (1922); *Gumaer v. Bell, supra; Temple v. Miller, supra.* The party seeking relief has the burden of establishing the grounds "by clear, strong and satisfactory proof." *Riss v. Air Rental, Inc.,* 136 Colo. 216, 218, 315 P.2d 820, 821 (1957). *Accord, Ehrlinger v. Parker,* 137 Colo. 514, 327 P.2d 267 (1958); *Burr v. Allard, supra; cf. Browning v. Potter,* 129 Colo. 448, 271 P.2d 418 (1954) (same standard employed in ruling on motion to set aside entry of default).[4]

Linda Lou Craig argues that a balancing test must be utilized to guide the trial court's discretion in considering excusable neglect, meritorious defense, and possible prejudice to the parties. Our cases have never required this. Failure to satisfy even one of these criteria may result in denial of the movant's request to set aside a default for good cause. *See Burr v. Allard, supra.* However, the nature of the asserted defense may shed light on the existence and degree of neglect, and possibly on the equitable considerations. Therefore, a consideration of all these factors together in a single hearing would provide the most complete information upon which to base the exercise of informed discretion and would be the preferable procedure in most cases.[5]

■■ The trial court's consideration of these three factors is guided by the general rule that the requirements for vacation of a default judgment should be liberally construed in favor of the movant, especially where the motion has been promptly made. *Gumaer v. Bell, supra.* Resolution of disputes on their merits is favored, and we

---

4. Many of the cases state the standard as "clear and convincing proof." *E.g., Burr v. Allard, supra.* This alternate formulation describes no different test than the "clear, strong and satisfactory proof" required by *Riss v. Air Rental, Inc., supra.*

5. Because we do not adopt the balancing test argued for by Linda Lou Craig we do not hold that a trial court is required in every case to hear evidence on all three criteria in a single proceeding. We do not reach the question of whether the trial court abused its discretion in the present case by isolating excusable neglect as the only subject for hearing because we find an abuse of discretion on other grounds, as discussed in part II of this opinion.

have been receptive to promptly filed motions to set aside default judgments, *F & S Construction Co. v. Christlieb, supra; Walker v. Associates Loan Co., supra; Drinkard v. Spencer, supra; Gumaer v. Bell, supra,* while disfavoring relief where the moving party has delayed substantially in seeking to set aside a default judgment, *e.g., Ehrlinger v. Parker, supra; Riss v. Air Rental, Inc., supra; cf. Snow v. District Court,* 194 Colo. 335, 572 P.2d 475 (1977) (trial court properly refused to set aside default where ten months had elapsed between the default and the motion to set it aside).

The reasons for a rule of liberality in evaluating promptly filed motions to set aside default judgments are especially compelling as applied to motions to set aside orders admitting wills to probate. Persons interested in the estate of a decedent may not be intimately acquainted with the facts bearing on the grounds for a possible will contest. A challenge to a will is not a matter to be undertaken lightly, yet the Colorado Probate Code requires only ten days notice of a petition for formal probate to be given to an interested party. Sections 15–12–403(1)(a) and 15–10–401(1), C.R.S. 1973 (1981 Supp.). This is a short time within which to arrange for legal counsel, conduct any necessary factual investigation, and make a considered decision whether a will contest should be undertaken. *See generally, Korleski v. Estate of Korleski,* 22 Wis.2d 617, 126 N.W.2d 492 (1964).

■ Yet another consideration commends the rule of liberality as appropriate in determining whether delay in moving to set aside a probate order is justified. Competing with the policy favoring resolution of disputes on their merits is the important interest in finality of judgments. That interest receives strong protection as applied to orders admitting wills to probate, for section 15–12–413, C.R.S.1973, limits challenges to orders of probate to the thirty-day period allowed for appeal. In order to accord appropriate weight to the countervailing interest in resolving disputes on their

merits, we believe that liberality must be exercised in determining whether a motion filed within that thirty-day period to vacate an order of probate has been delayed for good cause shown.

## II.

We now review the evidence in the record as it bears on the three criteria which guide the trial court's discretion to determine whether an abuse of discretion has been shown. We conclude that the record contains sufficient allegations of a meritorious objection to admission of the will to probate [6] and is devoid of any indication that prejudice would result from setting aside the order of probate and hearing Linda Lou Craig's objections to probate of the will on their merits. The critical inquiry is whether the trial court abused its discretion in determining that Linda Lou Craig had not satisfied the excusable neglect criterion by demonstrating a sufficient reason to justify her failure to object to the August 20, 1975, will until after it had been admitted to probate.

### A.

■ A movant must support a claim of meritorious defense by averments of fact, not simply legal conclusions. *Ehrlinger v. Parker, supra; Burr v. Allard, supra.* The factual allegations must be set forth with sufficient fullness and particularity to show that a defense is "substantial, not technical; meritorious, not frivolous; and that [it] may change the result upon trial. . . ." *Gumaer v. Bell,* 51 Colo. at 481, 119 P. at 683. Preferably, the factual support should be in the form of a tendered pleading. Thus, we said in *Ehrlinger v. Parker, supra,* "[o]n filing of a motion to set aside default judgment, where there has been proper service on defendant, and no appearance within the allotted time, there should be tendered for filing an answer setting forth facts which, if established, would result in a judgment materially different than the judgment entered." 137 Colo. at 519, 327 P.2d at 269–

6. The meritorious defense criterion as applied in will contests can be more precisely denomi- nated a meritorious objection to admission of the will to probate.

70. As the United States Tenth Circuit Court of Appeals has cautioned, however, "[f]actual allegations, if otherwise sufficient, are not objectionable because of the means by which they become part of the moving papers. The allegations may be satisfactorily presented in the written motion itself, in an appended proposed answer, or in attached affidavits." *In Re Stone,* 588 F.2d 1316, 1319–20 (10th Cir. 1978). Although it is not necessary to permit testimony on the existence of a meritorious defense, a trial court in its discretion may find it useful to do so in some cases. *See id.* In ruling on the existence of a meritorious defense, a trial court should not attempt to evaluate the ability of the movant to establish the pleaded facts at trial. *Gumaer v. Bell, supra.* Even when supplementary testimony is received, "the focus will be on the legal sufficiency of the allegations made in the moving papers rather than their truth." *In Re Stone, supra,* 588 F.2d at 1320.

■ The averments supporting the asserted objections of lack of testamentary capacity and undue influence are contained in an affidavit of the Craigs attached to the motion to vacate the order of probate and in other affidavits offered but not received at the hearing to vacate the order of probate. As the determination of whether a meritorious defense has been alleged does not require fact finding, we elect to consider this issue here rather than to remand the matter to the trial court for further consideration.

Linda Lou Craig and her husband signed a joint affidavit in which they state that the August 20, 1975, will was drafted within a few weeks after Lulu Ann King left the hospital following a massive heart attack. The affiants state that Mrs. King attacked·a nurse while in the hospital, left the hospital at her own insistence, assaulted and fired her housekeeper, suffered hallucinations, and displayed a lack of knowledge of her assets, all in a period immediately preceding the execution of the will. At the hearing, affidavits were proffered by the movant as an offer of proof of the decedent's mental state after the trial court ruled that subject beyond the scope of the hearing. Those affidavits were executed by the decedent's doctor, stepchildren and a stepgrandchild of the decedent, and other persons familiar with Mrs. King's situation. They corroborated and expanded upon the information in the Craigs' affidavit. These additional affidavits stated that Lulu Ann King's standards of neatness deteriorated dramatically immediately after her heart attack, and set forth incidents demonstrating Mrs. King's lack of understanding of her finances and her suspicion of those around her during this time. In particular, Mrs. King's doctor stated that "as the result of her massive coronary, LULU KING was never thereafter, in my opinion, mentally competent to know what she was doing or to understand and comprehend the results of actions she took." The doctor related a number of facts upon which her opinion was based, including the fact that Mrs. King was taking the drug leritan under prescription on a daily basis from the time of her heart attack until her death and that "[w]hile taking leritan a person is not responsible and does not comprehend what they are doing. They cannot conduct business affairs." The Craigs corroborated the information in their own affidavit by their testimony at the hearing. The various affidavits also contained statements reflecting that Rider shielded the decedent from her relatives and otherwise exerted influence over her. In sum, the record fully establishes that meritorious objections to probate of the will have been alleged.[7]

## B.

■ No equitable considerations making the requested relief inappropriate appear from the record. The motion to set aside the probate order was filed only 28 days after the order was signed. There is no indication in the record that anyone had

---

7. We express no opinion, of course, on the ability of Linda Lou Craig to establish the truth of these matters at trial.

relied upon the order, that any steps had been taken in probate administration that would have made it inequitable to consider Linda Lou Craig's objections to probate of the will on their merits, or that delay had impaired the ability of any party to adduce proof bearing on the validity of the will. The possibility that a different result might be reached if a contest were permitted is not the kind of prejudice of which a court can take cognizance in evaluating whether a probate order should be set aside. *Temple v. Miller, supra.* This, and the attendant expense of a contest hearing, is the only prejudice asserted by the respondent. Furthermore, because detrimental reliance is an essential element of estoppel, *Baumgartner v. Tweedy,* 143 Colo. 556, 354 P.2d 586 (1960); *Thomas v. First National Bank of Price, Utah,* 97 Colo. 474, 51 P.2d 589 (1935), the absence of any indication of reliance on the order of probate demonstrates that the trial court erred in concluding that the waivers of service signed by Linda Lou Craig estopped her from objecting to that order of probate.

### C.

■ We now reach the central issues in this appeal: whether the trial judge applied the proper criteria and acted within his discretion in concluding that Linda Lou Craig had not demonstrated a legally sufficient reason for delay in objecting to the probate of the will. As discussed above, the proper criterion by which the delay should be tested is excusable neglect. The record shows that throughout the proceeding the court and counsel were uncertain of the standard to be utilized. The court's order denying the motion reflects the confusion. It tested the material averments in the motion and the statements in the accompanying affidavit by the proof adduced at the hearing and found that the Craigs' statement that they were not aware of the implications of the word "probate" or the need to assert their obligations prior to the July 19 hearing was incredible. The court based this finding on the Craigs' education and experience and Mr. Craig's familiarity with probate terms, as demonstrated by his testimony at the hearing. It noted that Mr. Craig had traveled to Grand Junction on June 2 and had talked with a bank trust officer and the attorney for the estate, and found that all the facts upon which the will contest is based were known to the Craigs or could have been easily discovered by them before admission of the will with but a modicum of inquiry. The court also found that the Craigs mistakenly thought the stepchildren of the decedent might receive a share of her estate if the will were set aside, and this was a factor in their initial decision not to contest the will. These considerations are relevant to the excusable neglect issue. The trial court went on, however, to hold that Rider was a natural object of the decedent's bounty because of his assumed assistance to the decedent in her declining years and that the best interests of Miles Craig would be served by admission of the will. Based on these considerations, the trial court found "that there is neither good cause shown nor due diligence exemplified by [Linda Lou Craig] of the dignity and kind required to vacate the order of court admitting the will of Lulu Ann King to probate. . . ." We conclude that the trial court abused its discretion in so ruling.

As we have noted, a rule of liberality is to be applied in evaluating promptly filed motions to set aside default judgments, and particularly orders of probate. We conclude that the burden of inquiry and promptness of decision that the trial court considered necessary do not comport with the excusable neglect standard, especially when considered in the light of the rule of liberality appropriate here.

The uncontested evidence shows that Linda Lou Craig lived with her husband in New Mexico. Lulu Ann King lived near Grand Junction, Colorado, and Linda Lou Craig had infrequent contact with her. The decedent visited the Craigs in 1974, shortly after their son Miles was born. Between 1974 and 1978 they conversed over the telephone approximately two to five times per year. In 1975, the Craigs learned that Lulu Ann King had suffered a heart attack and

that she had left the hospital at her own insistence. After her heart attack, the decedent mentioned to the Craigs in a few telephone conversations her visions of "black men" or "black riders," which Mr. Craig interpreted as visions of death. Linda Lou Craig next visited the decedent in the fall of 1977 shortly before Lulu Ann King's death and noticed at that time that her mental and physical health had failed considerably but that she still appeared reasonably competent.

On May 21, 1978, one day after the decedent's death, the attorney for the estate mailed to Linda Lou Craig a notice of probate hearing along with a waiver of service form and a copy of Lulu Ann King's August 20, 1975, will. The waiver form stated that Linda Lou Craig "hereby waives service of the Notice of the Hearing on the Petition to Probate the Will of Lulu Ann King," but did not state that signing the form would constitute waiver of objections to probate of the will. Mr. Craig discussed the documents by telephone with the attorney for the estate. The evidence was in conflict as to whether the attorney told Mr. Craig that signing the form would constitute waiver of objections to probate or whether, to the contrary, he minimized the significance of the waiver and the hearing. The trial court made no finding to resolve this conflict.[8]

Before signing the form, Mr. and Mrs. Craig discussed the will. They were concerned about the fact that only their eldest son was named as a beneficiary and that the decedent had exhibited some signs of a failing mental capacity. They also thought that the decedent's steprelatives (the Kings) planned to contest the will and were concerned about the effect such a contest might have on the bequest to their son Miles. Linda Lou Craig signed the waiver on June 1, deciding to "wait and see what was happening" before objecting to the will.

Thereafter, before the June 19, 1978, probate hearing, Mr. Craig traveled to Grand Junction to learn more about the situation. He talked with the attorney for the estate, a bank trust officer, Rider, and others. At that time, he did not inquire of the Kings, who lived in the Grand Junction vicinity, because of possible bad feelings on their part over their exclusion from the will. Shortly after the will had been admitted, the Craigs went to Grand Junction and conducted further inquiries including discussions with Rider and the Kings. They learned for the first time that a competency proceeding had been contemplated but not commenced by the Kings after Lulu Ann King's heart attack and about the time of execution of the will. Their concern about the validity of the probated will intensified as their knowledge of the decedent's mental state increased, resulting in the July 19, 1978, filing of a motion to set aside the order of probate.

Even if the Craigs had most of the basic information upon which Linda Lou Craig now founds her challenge before the admission of the will and even if the delay in objecting to probate was motivated in part by a mistaken belief as to the possible disposition of the estate if the will were set aside, we believe that the trial court abused its discretion in holding that the delay in filing the will contest was not excusable. We arrive at this result notwithstanding the fact that the Craigs understood the meaning of probate, as the trial court found. In reaching this conclusion we are impressed by the brevity of the delay, the distance between the Craigs' home and Grand Junction, the absence of close contact between the Craigs and the decedent, their lack of intimate familiarity with her mental condition, the rather extensive efforts the Craigs made to learn the facts after receiving the notice of probate, the need to engage legal counsel to institute a will contest, and the seriousness of the decision to object to the probate of a will. The court's holding that the Craigs were inexcusably neglectful in not objecting to probate of the will under these circumstances

---

8. Although this fact is relevant to the excusable neglect question, we do not consider it determinative. Thus, a remand for a factual determination is not necessary.

does not give adequate weight to the extensiveness of the efforts necessary to arrive at their decision, imposes a requirement of diligence to a degree inconsistent with the excusable neglect standard, and is incompatible with the rule of liberality. We also note that the trial court's ruling was influenced by extraneous considerations, most importantly the trial court's views as to whether the will distribution scheme was fair.

We reverse the order of the trial court denying the motion to set aside the order admitting the decedent's will to probate and return the case to the court of appeals for remand to the trial court with directions to set aside the order of probate and hear the objections to probate on their merits.